## J. E. GOMEZ *v.* HAWAIIAN GAZETTE COMPANY, Limited, and H. M. WHITNEY.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JULY 9, 1895.                    DECIDED JULY 30, 1895.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE COOPER, WHO SAT IN PLACE OF MR. JUSTICE BICKERTON, ABSENT FROM ILLNESS.

To impute to another the commission of an offense involving moral turpitude, and which is punishable with imprisonment, is libelous *per se* if written or printed and published.

Damages are recoverable in such case, though no special damages are alleged or proven.

It is libelous *per se* to charge in a printed publication a person with the offense of selling opium, the offense being punishable by imprisonment at hard labor, and its commission involving moral turpitude and subjecting the offender to social degradation.

The statute allowing under a plea of general issue the introduction, in defense, of "any matter of law or fact whatever," it was error to refuse defendants' evidence of the truth of the defamatory matter, they having pleaded the general issue but not justification.

### OPINION OF THE COURT BY JUDD, C.J.

In this case the plaintiff obtained a verdict and a bill of exceptions was allowed the defendants. The case was tried in the Circuit Court, First Circuit, it being an action of trespass on the case in which plaintiff claimed damages of the defendant corporation and its manager, for an alleged libel published in the Pacific Commercial Advertiser, a newspaper printed and published by the said defendants, in the issue of November 30, 1893.

The alleged defamatory words taken from the declaration and omitting the inuendoes are as follows: "Gomez and his dope. The Portuguese jeweler arrested with opium in his possession. J. E. Gomez, the jeweler, was arrested last evening and charged with having opium in his possession. He was afterwards released on bail. The arrest was made in the house of a half-Chinaman named Apio, in Nuuanu Valley. Gomez had made a contract with another Chinaman to sell him thirty tins of the drug. The Chinaman had been furnished with money to buy it, and last night was the date set for completing the transaction. Just as Gomez was about to pass over the opium, the police descended and raked the whole party in."

The declaration did not allege special damages, the plaintiff relying upon his position that the words of the alleged publication were libelous *per se.*

At the close of the plaintiff's case, defendants' counsel asked that the plaintiff be non-suited on the ground that the article in question did not contain words libelous (actionable) *per se,* and in such case the special damages must be proved, and none had been proved. The Court overruled the motion and the case proceeded.

Are the words in the publication libelous in themselves?

The law applicable to libel is a creature of growth, derived from English and American judicial precedents through a long period of time. We have no statutory enactments defining the law applicable to civil suits for damage for defamatory words, either spoken or written, and we must resort to the principles laid down by judges and jurists under the common law.

The defamatory matter in question comes within that class which affects private persons and which "imputes to a person the commission of a crime." Newell on Defamation, etc., p. 67. Or as Starkie, Sec. 98, expresses it, "When an indictable offense is imputed." Odgers, Sec. 53, defines the class as "When the words charge the plaintiff with the commission of some indictable offense." The English rule seems to be that words, to be actionable without proof of special damages, or if written or printed,

to be libelous *per se*, must be such as impute a crime punishable
with imprisonment, and if punishable by penalty of fine only
they are not actionable without proof of special damages. There
has been great fluctuation of opinion in regard to this rule.
Lord C. J. Holt held that not every charge of misdemeanor was
actionable—only such as entailed "scandalous" and "infamous"
punishment. And, since at the present day there are offenses
which though not indictable are summarily punishable with
imprisonment, the rule as first stated needs modification. Judge
Cooley states the law as now settled and accepted by the
American Courts (Cooley, Torts, pp. 196 and 7, Ed. of 1880),
viz: "It is agreed upon all hands that it is not always *prima
facie* actionable to impute to one an act which is subject
to indictment and punishment. Importance in the law of de-
famation is attached to the inherent nature of the indictable act,
and also to the punishment which the law assigns it." Judge
Cooley adopts the test laid down in the leading case of *Brooker
v. Coffin*, 5 Johns. 190. "In case the charge, if true, will subject
the party charged to an indictment for a crime involving moral
turpitude, or subject him to an infamous punishment, then the
words will be in themselves actionable." He cites approvingly
*Pollard v. Lyon*, 91 U. S. 225, where the Supreme Court of
the U. S. per Clifford, J., say: "Words falsely spoken of a per-
son which impute to the party the commission of some criminal
offense involving moral turpitude, for which the party, if the
charge is true, may be indicted and punished," are actionable.

Judge Poland, in *Redway v. Gray*, 31 Vt. 298, says: "We
think that in addition to the offense charged being punished cor-
poreally, it must impute moral turpitude; the true reason why
assault and breaches of the peace and violation of the liquor
law are not such offenses as make words charging them action-
able, is because they do not necessarily, and in a legal sense,
imply moral turpitude."

The grade of the offense is immaterial, whether a felony or
a misdemeanor. In Massachusetts it is actionable to impute

drunkenness or unchastity to a woman, because both are subject to "disgraceful" punishment.

The gravamen of the action seems to be the risk of social degradation rather than the risk of punishment. This is recog- nized in our statute of criminal libel, where the words to be criminal must be such as "directly tend to injure the fame, reputation or good name of another person and to bring him into disgrace, abhorence, odium, hatred, contempt or ridicule, or to cause him to be excluded from society."

Conceding that the offense imputed must be one involving moral turpitude and (or) attended with the risk of social degra- dation, it becomes necessary to ascertain what "moral turpitude" is. As defined by Newell, p. 98, the adjective "moral" in this connection means "any manner or custom relating to or accord- ing to the received and customary rule of right and duty between man and man;" "relating to the private and social duties of men as distinguished from civil responsibilities." Turpitude signifies moral "baseness, depravity or enormity." *Id.* And "moral turpitude is defined to be an act of baseness, vile- ness or depravity in the private and social duties which a man owes to his fellowmen or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Id.* 99.

We are still in uncertainty, for the rule of right and wrong is derived from the state of public morals at the time. De- finitions of what actionable words are libelous are broad enough to allow adaptation of decisions to changes in the social state. Offenses that in some crude and debased state of society are considered as excusable, would in more refined and enlightened conditions be held to be the reverse.

The question, therefore, for us to decide is whether the offense of having opium in possession for sale involves moral turpitude and would subject the person to whom the offense is imputed to social degradation. This question is for the Court and not the jury. The defamatory matter in question seems to us to be unambiguous.

It would be popularly understood as imputing to the plaintiff the offense of being a dealer in opium; of selling opium. By all the authorities, if the alleged defamatory matter is plainly unambiguous, the question of its meaning and character is for the Court. Newell, p. 290, and cases cited.

The mere possession of opium by a private individual was by the law in force at the time of the alleged libel, and is now, punishable by a fine of not less than fifty nor more than two hundred and fifty dollars, or by imprisonment at hard labor for a term not less than one month nor more than six months, or both, in the discretion of the magistrate. And to import, sell, give or furnish opium was punishable by a fine of not less than five hundred dollars nor more than two thousand dollars, and by imprisonment at hard labor for any term not less than six months nor more than two years.

Though there is a marked difference of opinion in this community as to whether the use of opium as a narcotic can be prevented by the present law, making it contraband and forbidding its importation, sale or possession (some persons being of opinion that a law licensing dealers under restrictive regulations would be the better policy), the opinion is very general that its habitual and continued use effects evil and destructive results in the moral and physical nature of the user. This general subject, and especially the danger to which the young of all races residing in these Islands are exposed from the prevalence of the opium habit among Chinese, has for years been a matter of public discussion in the legislature and out of it. It seems to us that the sense of the community is that the conviction of a person as a smuggler of opium, a dealer in it or as having it in possession in any quantity, would subject him to social degradation, to say nothing of the ignominious punishment of imprisonment at hard labor that might follow. To a citizen of good repute an imputation of an offense of this character would be greatly damaging. It would expose him to odium or contempt. The offense of selling opium implies a willingness on the part of the offender to risk the health and morals

of the community for the sake of gain, and this we feel involves a degree of moral turpitude; and we hold the alleged defamatory matter is libelous, and the Circuit Judge was right in denying the nonsuit.

The plea in the case was the "general issue." It denied the truth of each and every allegation in the complaint.

On the close of the plaintiff's case, the nonsuit being denied, the defendants offered to prove the truth of the matter in the alleged libel. This was refused by the Judge on the ground that upon this complaint the plea of general issue did not put in issue the truth of the alleged libel. To this defendant excepted.

It is well settled according to the common law that in an action of this character (for libel or slander) the defendant under a plea of general issue cannot be permitted to give in evidence any matters tending to establish the truth of the defamatory matter. 2 Greenleaf Evid., Sec. 424. Newell, p. 787.

At common law if a defendant desires to admit the publication of the defamatory words and avoid the consequence by asserting the truth of the same, he can do so under a plea of justification. And the truth, if pleaded, is a complete defense to a civil action of slander or libel.

The defendants contend that the rule of the common law does not apply here in the face of the statute, which allows a defendant under an answer "denying the truth of the facts stated in the petition," to give in evidence, as a defense to any civil action, "any matter of law or fact whatever." Compiled Laws, Secs. 1106 and 1107.

This statute law has been amended as regards defenses to actions upon negotiable securities, requiring an affidavit of merits as a prerequisite to an answer. But we know of no statutory limitation to the right of a defendant in a suit for libel to prove the truth of the alleged libelous matter under a plea of general issue.

The statute above referred to modifies the common law. It was therefore error on the part of the Court in refusing to allow defendants to put in evidence the truth of the defamatory

matter, and for this reason a new trial should be ordered, which is done accordingly.

*P. Neumann*, for plaintiff.

*W. R. Castle*, for defendants.