LAURA WALMSLEY, Respondent, *v.* JOHN KOPCZYNSKI, Appellant.

Third Department, July 6, 1922.

Slander — words slanderous per se spoken under circumstances indicating that defendant may have had proper motive — court's action in refusing to charge that words were privileged, and in charging that plaintiff had burden of providing malice, sufficiently favorable to defendant — evidence — plaintiff tendered issue of chastity — evidence of specific acts damaging to plaintiff's good name competent — pleadings — such evidence admissible under general denial.

In an action for slander wherein the words alleged to have been used by the defendant were slanderous *per se*, but the defendant showed circumstances which indicated that he might reasonably be supposed to have had a proper motive in

using the words, the action of the trial court in charging the jury that on the question of malice the plaintiff had the burden of proof was as favorable to the defendant as he could ask, although the court held on the trial and in a refusal to charge that the language used by the defendant was neither privileged nor qualifiedly privileged.

Where in such an action the plaintiff tenders the issue of her chastity and becomes a witness in her own behalf, it is reversible error for the court to strike out evidence of specific acts damaging to the plaintiff's moral character and good name and showing a lack of sensitiveness, as the evidence was important on the question of the amount of damages. Such evidence is admissible under a general denial.

APPEAL by the defendant, John Kopczynski, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chemung on the 7th day of February, 1920, upon the verdict of a jury for $850, and also from an order entered in said clerk's office on the 26th day of July, 1920, denying defendant's motion for a new trial made upon the minutes.

*Edgar Denton, Jr.*, for the appellant.

*James O. Sebring*, for the respondent.

KILEY, J.:

Upon the trial of this action the jury found that defendant, on the 25th day of February, 1916, at 104 Rose place in the city of Elmira, N. Y., said of and concerning the plaintiff: " If I had my way I'd have you out of here in twenty-four hours. I won't rent my house to whores like you and if I knew what you were I wouldn't let you in. You have two or three men running after you. The man that knocked on the kitchen window was some one after you. You know who it was. The woman next door said it was Mr. Smith. I will have no tenants, if you stay I'll make you move as soon as possible." The judgment in favor of plaintiff was for $850 and costs. Defendant's answer was a general denial, mitigation and justification. The evidence discloses that the defendant owns, at least, three apartments or houses for families at 104 Rose place in the city of Elmira, N. Y.; that plaintiff and her husband rented one of them and went into occupancy on February 15, 1916; that plaintiff's family proper consisted of herself, her husband and two children; that boarding with them was one Smith referred to above, and he had been there more or less for five years previous to the trial. That the language quoted above, said of and concerning the plaintiff, is slander *per se*, there is no question. Defendant admits that he had a conversation with plaintiff on February 25, 1916; that Smith and one of plaintiff's boys, nine years old, were present; that he did not use the language imputed to him, but did indicate that he would like to have her move because of the trouble

that was being made by her and Smith's presence. Both the tenants in the other apartments had complained to him of this man Smith who was running into the house whenever plaintiff's husband was away, and remarks made by Smith to one of them. Also a fight between Smith and the husband which both witnessed. One of the tenants threatened to leave if plaintiff did not move. Defendant contends, this plaintiff being his tenant, and what he had heard, also finding Smith there on each occasion when he went there, and Smith having been introduced to him as Clark, and having been the cause of the trouble and conceded scandal in the neighborhood, that what he said should have been held by the trial court as privileged or at least as a qualified privilege. It could not have been held more than the latter if that could have been held. The court held upon the trial and in a refusal to charge that what defendant said to the plaintiff was not privileged nor qualifiedly privileged. It is not contended that the case could have been taken from the jury on the latter ground, as it could not, but the effect of so holding would have been to cast the burden of proving malice on the plaintiff. This position is clearly defined in *Lewis* v. *Chapman* (16 N. Y. 369), where it is said: " Malice is essential to every action for libel. It has been sometimes divided into legal malice, or malice in law, and actual malice, or malice in fact. These terms might seem to imply that the two kinds of malice are different in their nature. The true distinction, however, is not in the malice itself, but simply in the evidence by which it is established. In all ordinary cases, if the charge or imputation complained of is injurious, and no justifiable motive for making it is apparent, malice is inferred from the falsity of the charge. The law, in such cases, does not impute malice not existing in fact, but presumes a malicious motive for making a charge which is both false and injurious when no other motive appears. Where, however, the circumstances show that the defendant may reasonably be supposed to have had a just and worthy motive for making the charge, then the law ceases to infer malice from the mere falsity of the charge, and requires from the plaintiff other proof of its existence. * * * The term ' privileged,' as applied to a communication alleged to be libelous, means simply that the circumstances under which it was made were such as to repel the legal inference of malice, and to throw upon the plaintiff the burden of offering some evidence of its existence beyond the mere falsity of the charge." To the same effect is *Klinck* v. *Colby* (46 N. Y. 434) and *Hemmens* v. *Nelson* (138 id. 517). Many of the cases bearing upon this subject are collated and applied in *Pecue* v. *West* (191 App. Div. 620). The court charged the jury that upon the question of malice

plaintiff had the burden of proof. Outside of going into detail as outlined in the above-cited cases, I do not see what more could have been done by the court upon the evidence. I am not satisfied but what the rule laid down in *Ashcroft* v. *Hammond* (197 N. Y. 496) could be applied here, viz.: " It is true that a communication may be so extravagant in its denunciations or so vituperative in its character as to justify an inference of malice." The damage plaintiff sought was for injury to " her good name, fame and credit." The plaintiff was a witness in her own behalf and gave evidence to the effect that she was not guilty of the violations of law and morality implied in the charge, which she claimed, and which the jury has found, defendant made against her. The appellant urges the evidence given by a witness he called, showing acts of and around the plaintiff, more or less damaging to her moral character, to her good name, fame and credit, and showing a lack of sensitiveness, should not have been stricken out by the court. The evidence was to the effect that some time previous to the time alleged in the complaint plaintiff lived near her; that she saw the plaintiff and Smith walking out together practically daily, and all times of the day, with Smith holding plaintiff's arm, " whispering in her face, always kind of patting her on the shoulder as they walked by." Along at first the husband walked with them sometimes; then there came a time in the night when witness heard such swearing as to awaken her from her sleep; she came downstairs, she looked out the window, plaintiff's husband was getting up from the ground and the omnipresent Smith was standing over him. The husband was saying, " You have broken up my home, you have ruined my home; " Smith was saying, " Let me explain." Plaintiff was there and took her husband by the arm and told him she went downtown with her little boy, had just reached home, and that Smith came along to carry her packages for her. Witness swore before this occurrence she had not seen plaintiff's husband at home for three or four weeks, and after the husband went away, after this occurrence, she saw Smith there many times. This evidence was stricken out because defendant did not show that the circumstances had come to his attention before he visited plaintiff's apartments on the 25th day of February, 1916. Exception was duly taken which presents the only other proposition calling for consideration. This, in turn, presents two questions: Can evidence of general bad reputation be given? Can evidence of specific acts tending to show bad reputation be given? It should be recalled that in her complaint she tendered the issue of her chastity and faithfulness, and became a witness in her own behalf. Slander is a personal injury. (Code Civ. Proc. § 3343, subd. 9.) This cause of action, personal injury, is classed

with the cause of action for breach of promise to marry. (Code Civ. Proc. § 536.)* This evidence if competent at all, was competent under a general denial. (*Wandell* v. *Edwards*, 25 Hun, 498.) That evidence of a general bad reputation is competent in actions for personal injury was held by this court in *Brisack* v. *King* (199 App. Div. 213). In *Ford* v. *Jones* (62 Barb. 484) the court says (p. 489): " I take the rule to be that where character ' is directly in issue, specific acts may be proved; but where the issue is collateral, as upon the credibility of a witness, the proof must be confined to general reputation." This is held to be the correct rule in *Young* v. *Johnson* (46 Hun, 164) and *Osterheld* v. *Star Co.* (146 App. Div. 388). It does not answer appellant's argument, either upon the trial or upon this appeal, that the acts of plaintiff and Smith, evidence of which was stricken out, might be predicated on other than lascivious tendencies and desires, or that other means might have been used to ruin that home. It was for the jury to say. This evidence was potent; it meant much viewed in the light of other evidence in the case. Such a character as it was intended to portray is not usually delicately sensitive nor easily injured to any great extent. The jury might have taken that view and have determined that mere nominal damages would, in their judgment, suffice. The exception presents reversible error.

The judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to the appellant to abide the event.

---

* Now respectively. Gen. Constr. Law, § 37a, as added by Laws of 1920, chap. 917, and Civ. Prac. Act, § 339.— [Rep.