CHARLES PECUE, Appellant, v. GENELLA COLLINS, Respondent.

Third Department, January 10, 1923.

Libel — privileged communication — libelous letter addressed to New York Civic League by member is not privileged — ill health of defendant and belief in truth of rumors did not relieve defendant from liability — charging plaintiff with keeping disorderly house and with keeping girls for immoral purposes is evidence of actual malice — error to dismiss complaint at close of case — whether communication was qualifiedly privileged was question of fact.

A libelous letter addressed to the New York Civic League, a moral uplift corporation, by a member thereof and sent by it to the district attorney, is not a privileged communication.

The ill health of the defendant and her belief in the truth of the statements made in the letter do not relieve her from liability.

The letter, which charged the plaintiff with keeping a disorderly house and with keeping girls for immoral purposes, is evidence of actual malice and it was error for the court to dismiss the complaint at the close of the case.

Whether the excuse or explanation that the defendant belonged to the league was sufficient to accord to her letter a qualified privilege was not a question of law for the court; it was a question of fact for the jury.

HINMAN and VAN KIRK, JJ., dissent, with opinion.

APPEAL by the plaintiff, Charles Pecue, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Washington on the 3d day of May,

1921, upon the dismissal of the complaint by direction of the court at the close of the case after a trial before the court and a jury.

*Milford D. Whedon,* for the appellant.

*Brackett, Todd, Wheat & Waite* [*Benjamin P. Wheat* and *E. Raymond Shepard* of counsel], for the respondent.

KILEY, J.:

To affirm this judgment will have the effect of bestowing upon a corporation of the State of New York, described in its certificate of incorporation as " The New York Civic League," administrative and judicial functions. Its purpose as set forth in its certificate is as follows: " To educate and elevate public sentiment along all lines of moral, social and political progress and efficiency but especially with reference to temperance, gambling, Sunday observance, social purity, divorce and the preservation of the democratic principles of our government, and to secure the passage and enforcement of laws along all such lines in the United States, but especially in the State of New York." The purposes set forth are admirable and commendatory; but it contains none of the characteristics of a detective agency, and the State, by the certificate of incorporation, does not delegate to it any authority to enforce the law nor to engage in the administration of justice. Before the law it stands on the same level as any ordinary citizen. The defendant, by paying one dollar, or as much more as she chose, could and did become a member of this league. As such member, on the 18th day of October, 1918, she wrote to a Mr. Miller, superintendent of said league, a letter in which she said of and concerning the plaintiff: " Mr. Pecue, who kept a saloon near the railroad crossing, has been and is keeping a disorderly house." For some reason which does not clearly appear, on the 22d day of October, 1918, she wrote another letter, destination the same, in which she charged the plaintiff as follows: " Chas. Pecue, Potter Ave., who kept a saloon, is keeping girls for immoral purposes. One was taken to the hospital sick and another taken into the hospital off the street." These letters were handed by Miller to one West, and by him the libel was handed on to the district attorney of Washington county, and so published to the world. The plaintiff is the father of eight children who, with his wife, lived with him in his home at Granville, N. Y. So far as any specific evidence contained in this record is concerned, none of these charges were true. This action was brought by the plaintiff. The defendant, in her answer, admits that she wrote the letters containing the charges set forth in the complaint, and justifies such acts as privileged. Mr. Justice HINMAN does not uphold her contention, as to privilege, to the full

extent, but holds that the communications " were qualifiedly privileged." Such holding is based upon the assumption that having written to the league, or an officer thereof, she was relieved from any responsibility therefor, and immune from censure or claim for damage. Will it be claimed that if defendant had written the same charges to any citizen or officer of any other civic organization, she would not be guilty of publishing a libel; libelous *per se.* The party to whom she made those charges in writing had no more privilege before the law than any other citizen. Qualified privilege differs from absolute privilege only in that it casts the burden of proof of malice on the plaintiff; we so held in *Walmsley* v. *Kopczynski* (202 App. Div. 104) and cases cited. It is urged that defendant swore she had no malice against plaintiff in making the charges; that, therefore, as was said by the learned trial justice, plaintiff failed to bear the burden of proof. That is not the test here. In *Pecue* v. *West* (233 N. Y. 316), an action in which qualified privilege and more was urged as a defense, the court said: " Malice, however, does not mean alone personal ill-will. It may also mean such a wanton and reckless disregard of the rights of another as is ill-will's equivalent." In *Rose* v. *Imperial Engine Co.* (110 App. Div. 437) the court said, citing *Byam* v. *Collins* (111 N. Y. 143): " In that case it is shown that the essential element to support the claim of privilege is good faith, and that good faith can only be established by proving that ordinary care and prudence were exercised by the person making the charges to ascertain whether they were true or false." Let us see how the defendant met this test. Cross-examination: " You realized what it meant to Mr. and Mrs. Pecue to be charged with keeping girls for immoral purposes? *A. I don't think I thought particularly about it.* Q. You didn't give consideration to the enormity of the charge? *A. I didn't because——.* Q. What might result to them as a result of the charge, should it be false, didn't enter your mind when you made the charge? A. May I give you a quotation? Q. No, give me an answer. A. If it were not true, it wouldn't injure them. Q. What might result to them as a result of the charge, should it be false, didn't enter your mind when you made the charge? You didn't think what might be the result to them of your making this charge, should it prove false? *A. No, I don't think I did in that sense.* * * * Q. You didn't weigh that in your mind at the time you made this charge? *A. No.*"

When asked if she knew whether there was any girl at the plaintiff's on the eighteenth of October when she wrote the first letter she answered: " I don't know. * * * I don't know anything about it." Again: " Q. It was easy enough for the person that

was chatting with you about Miss Tucker to have gone there and made inquiry of them [neighbors], wasn't it? *A. I wasn't making any inquiries.* * * * Q. You had no personal knowledge of the situation at Mr. and Mrs. Pecue's at the time you wrote the letters, of what was transpiring there? A. No." Defendant also testified that she did not think any of the people with whom she had talked about the matter had any personal knowledge of the offenses charged. It is urged that defendant had influenza, was not well, and believed the gossip she had heard was true. I fail to see how such condition of health can be urged as establishing a privilege; it is not claimed that she was incompetent by reason thereof, or that her tongue or pen was affected. Judge ANDREWS in *Moore* v. *Francis* (121 N. Y. 199, 207), reversing a judgment for the defendant in an action for libel, said: " The evidence renders it clear that no actual injury to the plaintiff was intended by the defendants, but it is not a legal excuse that defamatory matter was published accidentally or inadvertently, or with good motives and in an honest belief in its truth." (See, also, *Smith* v. *Matthews*, 152 N. Y. 152.) It is urged that plaintiff was assured by the literature of the league that she would be protected; that no matter what she charged people with it should be treated as confidential; that no harm should come to her, and that by reason of such assurance she should be held harmless. It was not treated as confidential, and it was untrue. I find no reason for regarding the wrong done plaintiff of less importance than the inconvenience defendant's acts have or may cause her. We must look at the case as we find it; the question is not new; the books are full of similar situations. It is not suggested nor intended to be suggested that plaintiff should have a verdict at the hands of the court or jury. Two vital questions are presented: *First.* Are we going to hold that, because a person belongs to this league, he or she is relieved from responsibility for any and all vicious, libelous and slanderous charges he or she, through the league, publishes to the world? *Second.* Are we justified in holding that the trial court in this case had a right to usurp the function of the jury? As to the first question, the Civic League is no part or parcel of the administrative machinery of the State or the United States. It does not possess a single attribute of a court, prosecuting attorney, or jury; its function is advisory; its use as a shield to protect wrongdoers was never contemplated; none would repudiate such suggestion quicker or more emphatically than the New York Civic League. As to the second question, *supra*, in *Tim* v. *Hawes* (97 Misc. Rep. 30) the court, after considering numerous eminently respectable authori-

ties, lays down a rule, with which I am in accord, as follows: " Actual malice may be established as follows: (1) By proving actual ill-will. In addition to the ordinary methods of proving ill-will, the words complained of may of themselves afford the proof, where, for example, an attack is couched in such venomous language and so plainly exhibits hatred as to warrant an inference of actual ill-will. (2) By proving such gross negligence and carelessness as indicate a wanton disregard of the rights of others. (3) When the words complained of are proved as a fact to be false, if they are of a heinous, atrocious or extreme character, that, too, is evidence of actual malice."

Even if the charges made by defendant are to be held as coming under the rule of qualified privilege, in which I do not concur, the last subdivision quoted above applies. (13 Am. & Eng. Ency. of Law, 425, 426.) The only explanation or excuse given for the conceded libelous statements contained in her letter was that she belonged to the league. As to whether that was sufficient to accord to her a qualified privilege was not a question of law for the court; it was a question of fact for the jury. (*Byam* v. *Collins,* 111 N. Y. 151; *Hamilton* v. *Eno,* 81 id. 122; *Grant* v. *Herald Co.,* 42 App. Div. 354; *Cohalan* v. *New York Press Co.,* 212 N. Y. 347; *Warner* v. *P. P. Co.,* 132 id. 181; *Saunders* v. *Post-Standard Co.,* 107 App. Div. 84; *Payne* v. *Rouss,* 46 id. 315.)

The judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

H. T. KELLOGG, Acting P. J., and HASBROUCK, J., concur; HINMAN, J., dissents, with an opinion in which VAN KIRK, J., concurs.

HINMAN, J. (dissenting):

The action is based upon two letters written October 18, 1918, and October 22, 1918, respectively, by the defendant, a member of the New York Civic League, residing at Granville, N. Y., to officers of the league at Albany, N. Y., in which the plaintiff, who had been conducting a saloon in the village of Granville, was referred to as the keeper of a disorderly house. The letter of October eighteenth was addressed to Rev. O. R. Miller, the president and State superintendent of the league. After having received a letter in reply, not from said Miller but from George H. West, the superintendent of the law and order department of the league, the defendant wrote to said West the letter of October twenty-second. At the outset of the trial the plaintiff offered the letters in evidence. Inasmuch as the letters also listed lawless acts charged to have been committed by persons other than the

plaintiff, the attorney for the defendant properly sought to avoid the presentation to the jury of such prejudicial matters, extraneous to the issue joined here. He suggested that it would not be necessary to offer the letters or copies of them in evidence, since the pleadings sufficiently admitted the material facts. The court, however, said that the plaintiff's counsel could read the portions pertaining to the plaintiff. Instead of doing simply that, the plaintiff's counsel stated: " I am offering without objection, I take it, a copy of the letter dated Granville, October 18th, addressed to Rev. O. R. Miller, Albany, N. Y., and I read so much of that letter as is involved in this action, and which the defendant admits by her answer was sent. ' A Mr. Pecue, who kept a saloon near the railroad crossing, has been and is keeping a disorderly house.' " No objection was offered and, adopting a liberal rule in furtherance of justice, it is not too much to say that the whole of this letter so far as material and relevant was offered and identified sufficiently to permit this court to examine it upon appeal. With reference to the other letter, counsel for the plaintiff said: " I offer in evidence letter dated Tuesday, October 22, 1918, that portion of the letter which reads as follows, and which is admitted by the answer: ' Charles Pecue, Potter Avenue, who kept a saloon, is keeping girls for immoral purposes. One was taken to the hospital sick and another taken into the hospital off the street.' " No objection was made to this offer, but while the language of the offer does not clearly indicate an offer of the whole letter with the reading of only a portion, it is sufficiently identified to permit this court to examine it upon appeal to uphold a judgment, not to reverse it, to cure an omission through inadvertence of proof or neglect of the parties to print the document in the record. (*Stilwell* v. *Carpenter*, 62 N. Y. 639; *Munoz* v. *Wilson*, 111 id. 295, 299; *People ex rel. Warschauer* v. *Dalton*, 159 id. 235, 239; *Stemmler* v. *Mayor, etc.*, 179 id. 473, 482.)

It is the contention of the defendant, the respondent here, that she should be credited with having asserted her charge as hearsay and not upon personal knowledge. Apparently she so pleads in her answer. The letters are not printed in the record before us and the defendant asks us to take judicial notice of their contents from our own records in the companion case of *Pecue* v. *West* (191 App. Div. 620), wherein the same letters were printed in full. To take such judicial notice of facts appearing in the court's own records is not unprecedented. (*Vose* v. *Yulee*, 64 N. Y. 449, 452.) The cause of action here grew out of the act of writing these particular letters. They constituted basic evidence. They were before the court at the trial and the justice presiding was undoubt-

edly possessed of full information as to their contents when he decided the motion to dismiss the complaint. The exclusion of the reading of the portions relating to acts of persons other than the plaintiff was proper in order to narrow the issue and to exclude from the consideration of the jury that which would be clearly prejudicial. We find, upon reading the letters in full in the record of *Pecue* v. *West* (*supra*), that there were general statements in the letters which bore a distinct relation to the items expressly relating to the plaintiff and which indicate that the defendant's letters were written upon information and not upon personal knowledge. In the letter of October eighteenth there was contained the following: " A Mr. Pecue who kept a saloon near the railroad crossing has been and is keeping a disorderly house. These are a few of the lawless cases reported." The first sentence was read into the record below. The second sentence was not. The letter of October twenty-second stated: " The following information is received. * * * Charles Pecue, Potter Avenue, who kept a saloon is keeping girls for immoral purposes. One was taken to the hospital sick and another taken into the hospital off the street." The second and third sentences were read into the record. The defendant's counsel tried to read the first sentence into the record but it was objected to by plaintiff's counsel and the record does not reveal the ruling of the court. We do not see any reason why, under the peculiar circumstances of this case, we should be precluded from seeing judicially the whole of these letters which are set forth in our own records. To so consider these letters as a whole would not affect the substantial rights of the plaintiff. We could, under the circumstances, permit the letters themselves to be exhibited to us upon the argument, since the record clearly identifies them. There is no dispute as to their accuracy as they appear in our own records in *Pecue* v. *West* (*supra*). Their omission from the record here may be cured in the manner requested, without abuse of discretion. (Civ. Prac. Act, § 105.)

The New York Civic League is a membership corporation existing under the laws of this State and one of its lawful purposes, as expressed in its certificate of incorporation, was to secure the enforcement of laws aimed at the suppression of vice. Its principal office was located in the city of Albany, N. Y., and it relied upon its members throughout the State to furnish its officers at Albany with information relative to local conditions. The defendant was a member of this corporation and had been for years one of its ardent supporters. She had been assured by the agents of the league orally and by a bulletin of the league that any communication would be treated as strictly confidential and that her complaint

would be investigated by the league. The bulletin stated: " Any communication * * * in regard to any violation of the law that is demoralizing to a community is always treated as strictly confidential. Your name will not be connected in any way with any case which you may present to us. * * * We will investigate every complaint sufficiently to be sure the facts stated to us are true, as we are careful to avoid taking up any case presented to us out of spite." At the time of writing the letters in question the defendant was not in good health and an epidemic of influenza, which was prevailing at the time, was occupying the attention of the defendant and many of her friends who were engaged in relief work and were running an impromptu hospital for the victims. · There were meetings of these people at the defendant's house prior to the writing of the letters and during the course of these meetings the defendant was informed by a number of her friends, some of whom she named at the trial, that the plaintiff had been and was keeping a disorderly house; that he was keeping girls for immoral purposes; that one was taken to the hospital sick and another was taken to the hospital off the street. One of these friends was a witness for the defendant at the trial and corroborated her testimony. She believed the statements concerning the plaintiff to be true and sent the letters for the purpose of having the matter investigated by the league, believing at the time that it would be investigated in accordance with the pledge of its officers and agents as communicated to her orally and through the bulletin of the league. She made no other publication of the statement and she pleads privilege as a defense.

The law of this case in some, if not all, of its phases has been passed upon by the Court of Appeals in the case of *Pecue* v. *West* (233 N. Y. 316). To use the language of ANDREWS, J., writing in that case (at p. 319) it seems that " without making the slightest investigation; without stating that he was acting on information which he had not verified or attempted to verify; speaking as of his own personal knowledge, West wrote and sent to the district attorney of Washington county a letter containing: ' Charles Pecue, Potter Avenue, formerly proprietor of a saloon, has been and is keeping girls for immoral purposes. One was taken to the hospital sick and another taken to the hospital off the street. The place is in Granville, Washington County, New York.' " The court held that in giving such information to a district attorney there was no absolute privilege but at most a qualified privilege; that to justify a recovery in an action for libel, the plaintiff must establish that it was made maliciously and without probable cause; and that such malice may be inferred from a wanton and reckless

disregard of the rights of another. The court held that the jury might have inferred such malice in that case and that the complaint should not have been dismissed, saying: " But if the jury might fairly reach the conclusion that under the circumstances his action was reckless and wanton; that he made a false charge, not caring whether it was true or false; that he was guilty of more than mere negligence or bad judgment; that he did not act in good faith or because he in fact believed the plaintiff was guilty of the charges brought against him; then the complaint should not have been dismissed. We are not dealing with a case where a citizen transmits to a district attorney for his investigation information, suspicions, rumors, gossip, for what they are worth. Malice could not be inferred from such an act, nor would it evince bad faith or recklessness. We confine our decisions to the precise facts before us — to a false charge, made as of personal knowledge, based solely upon a statement from an unknown correspondent as to information which she had received from some unknown source. Under such circumstances, malice, as we define the word, may be inferred."

If we may consider the full purport of the defendant's letters in question here, to the effect that she was not communicating false charges " made as of personal knowledge," but upon information received by her, it is clear that the communications of the defendant were qualifiedly privileged and that in the absence of proof of express malice by the plaintiff the complaint was properly dismissed. No such proof of express malice was presented by the plaintiff.

We think there is a further difference between this case and that of *Pecue* v. *West* (*supra*). There is a clear distinction between bringing information to a district attorney, a public officer whose duty it is to conduct criminal prosecutions, and giving such information to an officer of the league in question of which the defendant was a member, where the league officials have agreed to make an independent investigation and to treat the information as simply putting the officials of that league upon inquiry. In the latter case there existed a mutuality of interest, a confidential relationship and arrangement upon which the defendant had a right to rely whereby the officers of the league agreed to make their own investigation and to preserve the communications of the defendant inviolably secret, whereas the district attorney receiving such a statement as he received from West, purporting to set forth a fact, made as of personal knowledge, had a right to assume its truth as the basis of his action. In such latter case malice could be inferred because of the probable publicity to be expected, whereas in the first case there was no publicity contemplated or constructively possible in the mind of the defendant unless further

investigation revealed the truth of her charges. Even then it was not contemplated that the original complainant should be involved but that prosecution would follow the later investigation and be based upon the evidence thus furnished. It is well settled that " 'a communication made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this, though the duty be not a legal one, but only a moral or social duty of imperfect obligation.' " (*Byam v. Collins*, 111 N. Y. 143, 150; *Ashcroft* v. *Hammond*, 197 id. 488.)

It has also been said that " the law itself, relies upon and stimulates private interest as one of its most ready helpers," and that " several may lawfully meet and consult to prosecute a guilty person, or one against whom there is probable cause of suspicion; and that associations to prosecute felons are lawful." (*Klinck* v. *Colby*, 46 N. Y. 427, 433.)

We think that in the conduct of the defendant here there was not " such a wanton and reckless disregard of the rights of another as is ill-will's equivalent." (*Pecue* v. *West, supra*, 322.) Her conduct was not such that malice might be inferred by a jury, (1) because she had the right to believe that the affairs of the league of which she was a member would be carried on in accordance with its rule and promise to her, which meant that no damage would accrue to the plaintiff unless a complaint were pressed upon proofs other than her statement after proper investigation by the league itself, and (2) because she fairly and in good faith relied on hearsay coming to her from friends whom she knew and upon whose good faith she believed she could rely.

We think this case is distinguishable from that of *Pecue* v. *West* (*supra*), and even to the extent of holding that the communications of the defendant were qualifiedly privileged irrespective of those qualifying portions of her letters tending to indicate that her communications were based upon information received by her.

The judgment should be affirmed, with costs.

VAN KIRK, J., concurs.

Judgment reversed on the law and new trial granted, with costs to the appellant to abide the event.