EARLE E. AKU *v.* HAL LEWIS, AKA J. AKUHEAD
PUPULE, JIM LATHROP, AND PACIFIC BROAD-
CASTING CO., INC.

No. 4927.

NOVEMBER 13, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON
AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal by plaintiff, Earle E. Aku, comes from the trial court's entry of summary judgment under H.R.C.P. Rule 56(c)[1] upon motion by defendants, Hal Lewis, also known as J. Akuhead Pupule, Jim Lathrop and Pacific Broadcasting Co., Inc. (hereinafter referred to as KGMB).

The complaint alleged that defendants had maliciously published to its radio and television audience false and defamatory statements about the plaintiff, indicating that he was representing himself as defendant Lewis in an attempt to defraud the public.

Defendants' amended answer in part claimed the statements were qualifiedly privileged. This assertion of privi-

[1] H.R.C.P. Rule 56(c) provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

lege was twofold: that the statements constituted "fair comment and criticism" upon a matter of public interest by a public person and were "constitutionally privileged";[2] and that the publications were business communications made in defendants' interest, and the interest of the listening audience and general public.

Lewis and KGMB counterclaimed that Earle E. Aku deliberately misappropriated Lewis' stage name, "J. Akuhead Pupule", known popularly as "Aku", by using language intended to convey the impression that radio personality "Aku" was connected with plaintiff's fund raising activities.

The trial judge held defendants' publications, even if libelous, qualifiedly privileged as business communications. Finding no genuine issue of abuse of this privilege, summary judgment was granted. We reverse, there being several issues of fact as to abuse. The essential facts follow.

In January 1968, plaintiff Earle E. Aku, employed by the Honolulu Police Department for sixteen years, was attempting to raise funds for the Kaneohe Bantam Football Team of the Hawaii Pop Warner Football League. A resident of the Kaneohe area, Oahu, Earle E. Aku served as the team's head coach in his spare time. He had organized and coached the team for four years.

To raise money for team expenses and a planned trip to the West Coast, plaintiff contacted William W. Carter, an experienced promoter of benefit variety shows. Carter agreed to stage a one night show in April 1968 featuring professional entertainers. All ticket sales were handled by Carter and several staff employees through telephone solicitations to approximately 2,000 Kaneohe residents. Because of plaintiff's respected reputation within the local community, after introducing the show and its purpose, the

---

[2] Defendants' reliance here is upon the applicability of New York Times Co. v. Sullivan, 376 U.S. 254 (1964). *See* discussion, p. 10 *infra.*

callers frequently mentioned that "Earle Aku" coached the team. Carter instructed all callers to always use plaintiff's full name and to identify him as coach. To those responding, Carter mailed show tickets and envelopes in which to remit payments.

On February 1, 1968 an unidentified employee of defendant KGMB's newsroom staff received a telephone call asking if "Aku" was in any way supporting a fund raising effort to send a football team to the mainland. "Aku" mentioned in the telephone call referred to defendant Hal Lewis, a well-known radio personality of KGMB whose trade name "J. Akuhead Pupule" in common parlance was "Aku".

Later on that same day, Robert W. Sevey, news director of KGMB, received a telephone call from one who said he had been contacted by a solicitor "who used Aku's name."[3] The inquiry again was whether radio personality "Aku" was supporting the benefit program. Sevey told the caller he did not know, but would check with Lewis. This Sevey did, Lewis denying any connection. Sevey received no other inquiries nor investigated the matter further prior to the 6:00 p.m. television newscast that evening.

Shortly before defendant Jim Lathrop reported the 6:25 p.m. sports news, he was informed by Sevey "that the station had been receiving calls from people who had been solicited for funds by someone using Aku's name but that Aku had never heard of it."[4] Having received no inquiries himself and relying completely on this information given him by Sevey, Lathrop, in his television broadcast, allegedly made a defamatory ad-lib remark concerning the plaintiff. No taped recording of the program was made.

---

[3] Sevey's affidavit, R. 143.

[4] *Id.*, R. 144. Lathrop's account in his affidavit, R. 141, is substantially the same.

A controversy exists as to Lathrop's exact words. Plaintiff and Carter, both of whom viewed the program, allege they heard Lathrop say something to the effect that, "There is a man of ill-repute who is posing as Aku, raising funds for a football team. This is a fraud, and not true, so watch out."[5] Defendant Lathrop contends he said "that somebody representing himself as KGMB's Aku is attempting to raise funds and * * * Aku is not raising funds for anything."[6]

In addition to Lathrop's alleged remarks, plaintiff contends defendant Lewis stated on his February 1, 1968 morning radio show that "he was the only Aku on this island and whoever was using the name Aku was a fraud as he, Lewis, had nothing to do with the show."[7] Defendant Lewis denied ever mentioning the plaintiff or his activities at any time. Nonetheless, after February 1, some would-be purchasers returned their tickets to Carter, while others failed to remit any payment.

Defendant KGMB makes no contention that its responsibility is any different than that of its two spokesmen, Lewis and Lathrop, and we shall proceed on the assumption that the relationship between the announcers and the defendant corporation is immaterial.

The questions on appeal in determining the propriety of the summary judgment below are: (1) the nature and applicability of defendants' assertion of a qualified privileged occasion to defame plaintiff; and (2) assuming the occasion so privileged, whether the record presents a material factual issue of abuse of privilege.

In considering the above questions, the inferences to be drawn from the underlying facts alleged in the materials

---

[5] Earle E. Aku deposition, p. 15; Carter deposition, p. 7.

[6] Lathrop deposition, p. 4.

[7] Dolores E. Aku's (plaintiff's wife) affidavit, R. 189.

submitted by the parties in connection with the motion for summary judgment must be viewed in the light most favorable to plaintiff, Earle E. Aku. *Abraham* v. *S. E. Onorato Garages,* 50 Haw. 628, 631, 446 P.2d 821, 824 (1968).

## I. DEFENDANTS' CLAIM OF QUALIFIEDLY PRIVILEGED OCCASION

A qualifiedly privileged occasion arises when the author of the defamatory statement reasonably acts in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty. *White* v. *Nicholls,* 44 U.S. (3 How.) 266, 290 (1845); *Harrison* v. *Bush,* 119 Eng. Rep. 509, 512 (1855); *Toogood* v. *Spyring,* 149 Eng. Rep. 1044, 1049 (1834).

The interest or duty of the recipients is essential to the privilege. If the person or persons to whom the communication is addressed have no recognized interest in the statement, there is no privilege. *Pecue* v. *Collins,* 204 App. Div. 142, 144, 197 N.Y.S. 835, 837 (1923); *cf. Lathrop* v. *Sundberg,* 55 Wash. 144, 148, 104 P. 176, 177 (1909).[8]

A radio personality's name may have substantial commercial value for advertising purposes which exists apart from his services as an announcer. *Uproar Co.* v. *NBC,* 8 F. Supp. 358, 361 (D.C. Mass. 1934). The exclusive use by the first appropriator of a name with this value will be protected. *Stout* v. *Laws,* 37 Haw. 382, 385 (1946).

Defendant radio star Hal Lewis' trade name, "J. Akuhead Pupule", was commonly spoken of in shorter form as "Aku". In its abbreviated form the trade name "Aku"

---

[8] Restatement (Third) of Torts, § 594(b), comment *g;* § 595, comment *d;* § 598, comment *b* (1938). Jones, *Interest and Duty in Relation to Qualified Privilege,* 22 Mich. L. Rev. 437 at 440 (1924).

had substantial commercial value and was a protectable interest.

Although no telephone calls to KGMB's studio on February 1, 1968 stated that plaintiff's solicitors were using the name "J. Akuhead Pupule", inquiries were made concerning radio personality "Aku's" affiliation with the fund raising. Thus, in light of its interest and that of the listening audience, defendant was privileged to disassociate Hal Lewis from Earle E. Aku's solicitation program.

But did the two phone callers' interest in Hal Lewis' fund raising participation justify the defendants' alleged state-wide comments on plaintiff Aku's character? We think plainly not. Accordingly, we find defendants' alleged statements raise several issues of abuse of their claimed privilege.

## II. DEFENDANTS' ABUSE OF PRIVILEGE

### A. The Nature of Defendants' Language

To entitle a defaming declarant to the benefit of a qualified privilege, he must establish that the circumstances of the publication were such as to bring his language within the purpose of the claimed privilege. A qualified privilege may be abused by the use of words not reasonably believed necessary to protect the particular interest for which the privilege is given.[9] Indeed, if the defamatory matter is totally irrelevant to the interest deserving protection or wholly unwarranted by any inquiry made, the court may declare the privilege lost as a matter of law.[10]

---

[9] Lathrop v. Sundberg, 55 Wash. 144, 148. 104 P. 176, 178 (1909).
Jones, *Interest and Duty in Relation to Qualified Privilege*, 22 Mich. L. Rev. 437 (1924). text and notes at 450-51.
Restatement (Third) of Torts, § 605 and comment *a* (1938).

[10] Hines v. Shumaker, 97 Miss. 669. 688, 52 So. 705, 707 (1910) ; Huntley v. Ward, 141 Eng. Rep. 557, 559 (1859).
Jones, *supra* note 9, at 453.

Defendants' alleged publications were defamatory on their face for they imputed to plaintiff the commission of a larcenous crime,[11] subjecting him to the risk of social degradation and charging him with conduct which would make him unfit to faithfully and correctly fulfill his duties as a policeman. *Gomez* v. *Hawaiian Gazette Co.,* 10 Haw. 108, 111 (1895); *Thompson* v. *Upton,* 218 Md. 433, 438, 146 A.2d 880, 883 (1958).

The statements allegedly made by Lewis and Lathrop went far beyond mere disassociation, for the accusatory language imputed to Earle E. Aku criminal conduct. The question arises whether the terms used were uncalled for and disproportionate to any business related interest defendants had.

Reference is made in defendants' brief to a number of cases standing for the proposition that where under ordinary social standards a reasonable man would feel a duty to speak, he may warn one who appears likely to deal with the plaintiff that his character is bad.[12] These cases are inapposite to the facts before us for two reasons: in all, the defaming defendant had personally dealt with the plaintiff and thus had substantial grounds on which to judge his character; and, the recipients either inquired about plaintiff's character or were directly affected by him. Here, no defendant personally knew Earle E. Aku, no inquiry was made as to his character, nor were many of

---

[11] HRS § 750-21. "False pretenses; punishable as larceny", provides in part:

"Every person who knowingly and designedly, by any false or fraudulent representation, statement, or pretense obtains from any other person money * * * is punishable in the same manner and to the same extent as for larceny of the money * * *."

[12] Browne v. Prudden-Winslow Co., 195 App. Div. 419, 186 N.Y.S. 350 (1921); Froslee v. Lund's State Bank, 131 Minn. 435, 155 N.W. 619 (1915); Richardson v. Gunby, 88 Kan. 47, 127 P. 533 (1912); Melcher v. Beeler, 48 Colo. 233, 110 P. 181 (1910); Fahr v. Hayes, 50 N.J.L. 275, 13 A. 261 (1888).

KGMB's large audience likely to be contacted by plaintiff's solicitation campaign limited to the Kaneohe area.

We hold, therefore, that the occasion was not such as to privilege any comment upon the plaintiff's character. The thrust of a privileged defamatory statement must be directed towards the protection of a legitimate interest. A publisher, like defendant at bar, who by a negligent choice of vituperative words strays far beyond the permissible perimeter of protection abuses the occasion. Should the jury upon remand of this case find as fact the controverted language was that as alleged by plaintiff Aku, then the defendants' declarations are unprivileged.

### B. Defendants' Excessive Publication

No matter how carefully he may have selected his words, a defaming defendant may not have acted prudently in publishing his remarks. If he spoke without due care under the circumstances so that his words were heard by parties having no recognized interest, his publication may be excessive and be an abuse of the occasion.[13]

Consideration focuses on two factors: the *persons* who qualify as permissible recipients, and the *method* employed as a reasonable means of communication to these persons.

The law strictly limits permissible recipients of a publication involving a suspicion or charge of crime.[14] With

---

[13] Restatement (Third) of Torts, § 604 comments *a* and *b* (1938). Jones, *supra* note 9, text and notes at 447-50. *See* Hallen, *Excessive Publication in Defamation*, 16 Minn. L. Rev. 160 (1931).

[14] Fahr v. Hayes, note 12, *supra*, possible victim known to be personally dealing with suspects; Pecue v. West, 233 N.Y. 316, 135 N.E. 515 (1922) and Joseph v. Baars, 142 Wis. 390, 125 N.W. 913 (1910), proper law enforcement officer; Doyle v. Clauss, 190 App. Div. 838, 180 N.Y.S. 671 (1920) and Fresh v. Cutter, 73 Md. 87, 20 A. 774 (1890), present employer of suspect; Billings v. Fairbanks, 139 Mass. 66, 29 N.E. 544 (1885), suspect himself and his associates.

*See also Restatement* (Third) of Torts § 595, comment *f* and § 598, comment *e*.

this type of declaration, the presence of disinterested third parties, while not automatically rendering the communication unauthorized, may do so if they are more than "casual" or "incidental" recipients of the defamatory matter.[15]

The 2,000 persons contacted in plaintiff's limited Kaneohe district telephone solicitation campaign is trifling in comparison to defendant KGMB's potential television audience spanning statewide. The believed crime threatened was not one of violence, but the unlawful taking of $3.00 for a variety show ticket. The identity of those solicited was unknown to the defendants.

Under these circumstances we do not regard it as beneficial to our citizenry that this information be given to a large number of "distinterested" people. Consequently, it is the opinion of this court that the defendants' method of publication was unreasonable because excessive and constituted an abuse of their claim of qualified privilege.

We agree with the lower court's ruling that the rationale of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) is inapplicable. While a "public official" by employment as a policeman, plaintiff's conduct as coach for the youth football team was unofficial and that of a private citizen. Thus, his activities were not within the purview of *Times, supra.*

### C. The Grounds for Defendants' Belief

It has been frequently said that a publication issued with "actual malice," or "malice in fact," evidences an abuse of privilege and will defeat the author's claim to

---

[15] Toogood v. Spyring, 149 Eng. Rep. 1044, 1049 (1834); Fahr v. Hayes, note 12, *supra;* Restatement (Third) of Torts, § 595, comment *f*, § 598, comment *e*, and § 604, comment *a* (1938).

it.[16] The word "malice" has acquired a plethora of definitions[17] depending upon the circumstances of each case, and for this reason we find its application unsatisfactory. Rather, the question presented is whether the defendants here acted reasonably with regard to the grounds they had for believing plaintiff Aku was misappropriating Lewis' trade name and defrauding the public.[18]

Two phone calls provide the basis for defendants' defamatory statements. Neither caller alluded to any criminal activity, the defendants themselves inferring such from each inquiry. Without further investigation newscaster Lathrop allegedly defamed plaintiff before a large television audience.

Occasions may be proper to publish information of a suspicion of crime, but this belief must be based upon personal knowledge. *Doyle* v. *Clauss,* 190 App. Div. 838, 180 N.Y.S. 671 (1920); *Joseph* v. *Baars,* 142 Wis. 390, 125 N.W. 913 (1910); *Fresh* v. *Cutter,* 73 Md. 87, 20 A. 774 (1890); *Fahr* v. *Hayes,* note 12, *supra.* Likewise, a trustworthy source is a permissible foundation for such a declaration. *Gregory* v. *Nelson,* 103 Kan. 192, 173 P. 414 (1918). As the court in the *Gregory* case stated at 194:

---

[16] *See* cases cited in text and notes in: Hallen, *Character of Belief Necessary for the Conditional Privilege in Defamation,* 25 Ill. L. Rev. 865 at 865-7 (1931) and Prosser, *Torts,* § 110, 821-23 (3d ed. 1964).

[17] Some courts emphasize defendant's intent or purpose, finding abuse if his motive is: bad, wrong, corrupt, or improper; or inspired by a desire to injure, ill will, gross indifference, or wanton and willful disregard of plaintiff's rights.

Others equate "malice" with lack of good faith. As evidence of good faith, judicial analysis ranges from considering all circumstances to looking solely at defendant's belief in what he says—his publication being privileged if he has some ground for believing its truth, although a reasonable man might not have so believed.

Defendants' references (citations omitted) defining "malice" are likewise not helpful. One case mentioned, however, did adopt the reasonable man standard. Freeman v. Mills, 97 Cal. App. 2d 161, 167, 217 P.2d 687, 692 (1950).

[18] Restatement (Third) of Torts, § 601 (1938).

"One who makes a false charge of larceny or other crime of that grade against another cannot escape responsibility by the *mere* statement of the grounds of his opinion. An untrue imputation of crime not privileged is actionable, and one who makes it should be sure that his charge is based upon *reliable* information and upon *sufficient* facts." (Emphasis added)

Here defendant allegedly published false charges, via television made as if upon personal knowledge, and based solely upon two statements from unknown correspondents who simply inquired about Lewis' association with plaintiff. Without more than the stated facts, we are of the opinion that defendants did not have any reasonable ground to believe the defamatory statements to be true. The defendants failed to exercise reasonable care.

Defendants rely on two cases arguing they had no duty to further investigate their suspicions.[19] Their quotations are taken out of context and are misplaced.

In *Tagawa,* note 19, *supra,* we found an investigatory failure alone on the part of the publisher might raise the issue of negligence but not the issue of "actual malice." The test in this case is *negligence,* and we find the defendants' alleged actions based on two strange telephone calls raises this issue.[20]

In *Doane,* note 19, *supra,* the defendant, upon inquiry as to the character and capabilities of a former employee, published a non-criminal statement based in part on unverified information given him by a third party. This third party source was apparent from his declaration.

---

[19] Tagawa v. Maui Publishing Co., 50 Haw. 648, 652, 448 P.2d 337, 340 (1968) ; Doane v. Grew, 220 Mass. 171, 177, 107 N.E. 620, 622 (1915).

[20] Indeed, in *Tagawa* at 655 we quoted from St. Amant v. Thompson, 390 U.S. 727, where the Court, in setting out the express limitations of the stricter "actual malice" test at 732 stated that a profession of good faith regarding a publication "* * * based wholly on an unverified anonymous telephone call" would not be persuasive.

In adopting the standard of reasonable care, we conclude that it is in society's interest in these circumstances to make defaming publishers less willing to speak due to the risk of being found negligent.[21]

## III. CONCLUSION

As we stated in *Abraham v. S. E. Onorato Garages,* 50 Haw. 628, 631, 446 P.2d 821, 824 (1968), in considering the validity of granting summary judgment under H.R.C.P. Rule 56(c) note 1, *supra,* this court in its appellate review must determine whether any genuine issue as to a material fact was raised and whether the moving party was entitled to a judgment as a matter of law.

The record below amply manifests several matters relating to abuse of defendants' claim of privilege, which raise issues of material facts. Those issues must be resolved by trial, not upon consideration of conflicting averments in depositions and affidavits.

We therefore reverse the lower ruling of summary judgment and remand for trial in accordance with the principles stated herein.

*D. N. Ingman* for plaintiff-appellant.

*James P. Conahan (Moore, Torkildson & Schulze* of counsel) for defendants-appellees.

---

[21] Hallen, *Character of Belief Necessary for the Conditional Privilege in Defamation,* 25 Ill. L. Rev. 865 at 876 (1931).