CHARLES W. KOHN dba KOHN'S SPORTING GOODS, Plaintiff-Appellee, *v.* WEST HAWAII TODAY, INC., a Nevada corporation, Defendant-Appellant

NO. 8239

(CIVIL NO. 5577)

DECEMBER 27, 1982

RICHARDSON, C.J., LUM, NAKAMURA, PADGETT, HAYASHI, JJ.

OPINION OF THE COURT BY LUM, J.

Defendant-appellant West Hawaii Today, Inc. appeals from the judgment entered in favor of plaintiff-appellee Charles W. Kohn in this libel action. The principal issue on appeal is whether plaintiff produced sufficient evidence of defendant's negligence in publishing the article at issue. Finding that plaintiff did produce the required evidence at trial, we affirm.

I.

On January 31, 1978, an article appeared in *West Hawaii Today*, a

newspaper published and circulated on the island of Hawaii, which stated in relevant part as follows:

> Twenty-two indictments were issued last week by the County grand jury, charging the suspects with second and third degree promotion of dangerous drugs. These drugs included heroin, cocaine, hashish and morphine.
>
> The drugs were confiscated during the execution of search warrants at several businesses, including *Kohns [sic] Sporting Goods* in Kailua, The Livery Stable in Honokaa, and homes in Kalaoa and Holualoa.

West Hawaii Today, Jan. 31, 1978, at 2, col. 2 (emphasis added).

The Hawaii County Police Department, in a search conducted on January 27, 1978, had actually only confiscated a total of six grams of marijuana from Kohn's Sporting Goods, located in Kailua-Kona, Hawaii. No evidence of the dangerous drugs mentioned in the article (*i.e.*, "heroin, cocaine, hashish and morphine") was found.

On January 26, 1979, plaintiff Charles W. Kohn, the owner and operator of Kohn's Sporting Goods, brought an action for libel against defendant West Hawaii Today, Inc. Plaintiff claimed that as a result of the article, Kohn's Sporting Goods suffered a net loss of over $35,000 for the 1979 calendar year, which forced plaintiff into bankruptcy. Plaintiff also claimed that the article caused him severe mental distress.

Defendant filed a motion for summary judgment on the grounds that the article was substantially true. The trial court denied defendant's motion for summary judgment and trial was commenced thereafter.

At the close of the evidence, defendant moved for a directed verdict on the grounds that plaintiff failed to produce sufficient evidence of defendant's negligence. Defendant's motion for a directed verdict was denied and the case was submitted to the jury.

By special verdict, the jury found that defendant had negligently libeled plaintiff in its article. The jury awarded plaintiff $35,000 in special damages and $40,000 in general damages.

## II.

Defendant's primary contention on appeal is that plaintiff failed to produce sufficient evidence of defendant's negligence and the

trial court therefore erred in refusing to grant defendant's motion for a directed verdict. Defendant argues that a jury is not allowed to conclude on the basis of its own lay inferences that a professional journalist was negligent in publishing a statement which defamed a private individual. Defendant contends that plaintiff was required to adduce evidence of negligence through an expert witness who could testify about the customary practices of the news media to establish a standard of care set by the journalism profession itself.

The question of the appropriate standard to be applied in defamation actions brought by private individuals against media defendants was addressed by the U.S. Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). The Court in *Gertz* held that the first amendment requires that the private plaintiff prove some degree of fault on the part of the professional publisher. The Court stated that it would not tolerate the imposition of strict liability in such a defamation action. Besides this limitation, however, the Court allowed states considerable latitude. The Court held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Id.* at 347. The states were thus allowed to establish a standard of liability for private figure defamation actions that was less than actual malice. But the Court held that if plaintiffs failed to prove actual malice, they would be precluded from obtaining presumed or punitive damages. In the absence of actual malice, the Court stated that plaintiffs could only be compensated for actual injury, including "out-of-pocket loss," as well as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 349-50.

A few years before the *Gertz* decision, in *Aku v. Lewis,* 52 Haw. 366, 477 P.2d 162 (1970), we adopted the negligence standard of liability for a defamation action brought by a private individual against mass media defendants. We stated in *Aku* that "[i]n adopting the standard of reasonable care, we conclude that it is in society's interest in these circumstances to make defaming publishers less willing to speak due to the risk of being found negligent." *Id.* at 378, 477 P.2d at 169. In *Cahill v. Hawaiian Paradise Corp.,* 56 Haw. 522, 536, 543 P.2d 1356, 1366 (1975), which was decided after *Gertz,* we reiterated our position that the standard of liability applicable to

private individual defamation actions would be that of negligence. We noted that "[a]s defined in *Gertz*, . . . the protections afforded by the First Amendment . . . permit imposition of liability where at least ordinary negligence is shown." *Id.* at 531, 543 P.2d at 1363. Upon careful consideration of the *Gertz* decision and existing case law, we found no reason to increase the protections and privileges afforded to the news media under the first amendment by requiring a higher standard of liability than negligence.

The negligence standard of liability thus governs the instant defamation action brought by a private individual against a media defendant. The precise issue still to be addressed, however, is whether expert testimony is required to establish the negligence of a professional disseminator of news in a private individual defamation action.

Defendant relies heavily on comment g to Section 580B of the Restatement (Second) of Torts to support its position that evidence of the standard of care required of a media defendant should have been adduced through expert testimony. Defendant requests that we adopt the philosophy of the Restatement which states in relevant part as follows:

> Evidence of custom within the profession of news dissemination would normally come from an expert who has been shown to be qualified on the subject. . . . In the absence of expert testimony, however, the court should be cautious in permitting the doctrine of res ipsa loquitur to take the case to the jury and permit the jury, on the basis of its own lay inferences, to decide that the defendant must have been negligent because it published a false and defamatory communication. This could produce a form of strict liability de facto and thus circumvent the constitutional requirement of fault.

Restatement (Second) of Torts § 580B comment g (1977).

A few courts have adopted the Restatement's position that the first amendment's protection of the press requires that negligence in private figure defamation actions be proven by expert testimony. Under this view, a media defendant's conduct is to be judged by the standard of care exercised by a reasonably prudent professional publisher or broadcaster in the news media industry. *See Gobin v. Globe Publishing Co.*, 216 Kan. 223, 233, 531 P.2d 76, 84 (1975); *Martin v. Griffin Television, Inc.*, 549 P.2d 85, 92 (Okla. 1976); *Seeg-*

*miller v. KSL, Inc.,* 626 P.2d 968, 976 (Utah 1981).

Other courts take the view that requiring expert testimony to establish negligence in a private figure defamation action would be akin to establishing a "journalistic malpractice" test, in which liability is based upon a departure from a standard of care set by the journalism profession itself. If expert testimony is required, these courts fear that conduct condoned by the news media industry that fell below an ordinary standard of care would insulate the entire industry from liability. These courts therefore reject the Restatement's position and define negligence in this context as a departure from the standard of care exercised by ordinarily prudent persons, which a jury can determine without the aid of expert testimony. *See Troman v. Wood,* 62 Ill.2d 184, 197-98, 340 N.E.2d 292, 298-99 (1975); *McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882, 885 (Ky. 1981); *Schrottman v. Barnicle,* 386 Mass. 627, ___, 437 N.E.2d 205, 214 (1982).

In the instant case, plaintiff did not produce an outside expert to testify about the customs and practices of the journalism profession as a whole. Nevertheless, plaintiff at trial did adduce evidence of defendant's own customs and practices in publishing an article and further elicited testimony regarding defendant's deviation from its own standard of care in publishing the particular article at issue.

Plaintiff called two key witnesses who were employed by *West Hawaii Today* at the time the article had been written to testify about the normal procedures followed by the newspaper staff to ensure the accuracy of submitted stories. Webster Nolan, an editor of *West Hawaii Today,* testified that the Hilo correspondent normally has the duty of going to the police department, checking the police blotter for a story, and then transmitting the information to the newspaper office. According to Mr. Nolan's testimony, one of the editors of the newspaper then has the duty to check for accuracy and has the authority to make any revisions he deems necessary. Paul Nishimuta, the general manager of *West Hawaii Today,* confirmed Mr. Nolan's testimony.

Mr. Nolan and Mr. Nishimuta did not know who had written the particular article at issue or how he had obtained his information. They also did not know who had edited the story and what he had done to check its accuracy. Nevertheless, it is evident from the testimony at trial that the unknown writer and the unknown editor

had not followed the newspaper's own normal procedures in publishing the article about the confiscation of dangerous drugs from Kohn's Sporting Goods.

The unknown writer and the unknown editor of the article had obviously not checked the police blotter or the police records to confirm and corroborate the story. If they had checked, they would have realized that only a total of six grams of marijuana had been confiscated. The police blotter prepared on the date of the search made no mention of hard drugs such as heroin, cocaine, morphine or hashish. Sergeant Richard Carter of the Hawaii County Police Department, who was present at the search of Kohn's Sporting Goods on January 27, 1978, testified that the police blotter was available for the press to pick up information and stories. Sergeant Carter further testified that the police reports on the search of Kohn's Sporting Goods, which he read and approved, also made no mention of dangerous drugs such as heroin, cocaine, morphine or hashish.

It can be reasonably inferred from the record that the staff of *West Hawaii Today* had failed to follow the procedures normally taken to ensure accuracy, in publishing the article about the confiscation of dangerous drugs from Kohn's Sporting Goods. The uncontradicted evidence at trial was sufficient for a reasonable trier of fact to conclude that defendant's employees had been negligent in writing and editing the particular article at issue.

We have recognized in nondefamation cases that where the issue of negligence is within the competence and understanding of the jury, additional expert testimony is unnecessary. *See, e.g., Brown v. Clark Equipment Co.,* 62 Haw. 530, 537, 618 P.2d 267, 272 (1980); *Sherry v. Asing,* 56 Haw. 135, 147-48, 531 P.2d 648, 657 (1975). The lack of expert testimony on a particular issue ordinarily does not bar a plaintiff's right to recovery, unless the evidence is of such a technical nature that laypersons are incompetent to draw their own conclusions from the facts presented without the aid of such evidence. *See, e.g., Nishi v. Hartwell,* 52 Haw. 188, 195, 473 P.2d 116, 121 (1970); *Phillips v. Queen's Medical Center,* 1 Haw. App. 17, 18, 613 P.2d 365, 366 (1980). These evidentiary rules also have validity in the defamation area.

Although we recognize that there may conceivably be certain circumstances where expert evidence is necessary in a private figure

defamation case, we refrain from adopting a rigid rule requiring expert testimony in all such defamation cases. The determination of whether expert evidence is required in a private figure defamation action should be made on a case-by-case basis, depending on the nature of the issue to be decided and the evidence actually adduced on that issue.

The determination of defendant's negligence in the instant case was within the competence and understanding of laypersons. Outside expert evidence would have been unnecessary and redundant. We therefore hold that the determination of defendant's negligence was properly one for the jury to decide, even without the aid of outside expert evidence. We accordingly affirm the trial court's denial of defendant's motion for a directed verdict.

### III.

Defendant's remaining contention on appeal is that the article published was substantially true and therefore the trial court erred in denying its motion for summary judgment. Defendant argues that the police did in fact find an illicit drug on plaintiff's business premises. Defendant admits that it erred in describing the "exact pharmacological agent," but argues that the mistake was negligible and therefore not actionable.

Many courts subscribe to the view that substantial truth is a defense to a defamation action. *See, e.g., Maheu v. Hughes Tool Co.,* 569 F.2d 459, 465-66 (9th Cir. 1977); *Gomba v. McLaughlin,* 180 Colo. 232, 236, 504 P.2d 337, 339 (1973); *Hein v. Lacy,* 228 Kan. 249, 259, 616 P.2d 277, 284 (1980); *Prahl v. Brosamle,* 98 Wis.2d 130, 141, 295 N.W.2d 768, 776 (Ct. App. 1980). *See also* Restatement (Second) of Torts § 581A comment f (1977). The Colorado Supreme Court in *Gomba v. McLaughlin, supra,* summarized the substantial truth defense as follows:

A defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting, of the matter is true.

The question, a factual one, is whether there is a substantial difference between the allegedly libelous statement and the truth; or stated differently, whether the statement produces a

different effect upon the reader than that which would be produced by the literal truth of the matter.

180 Colo. at 236, 504 P.2d at 339 (citations omitted).

The issue of substantial truth is ordinarily a matter for the jury to decide. The Restatement (Second) of Torts § 617(b) (1977) provides that

Subject to the control of the court whenever the issue arises, the jury determines whether . . .

(b) the matter was true or false. . . .

Comment a to section 617(b) states in relevant part that "the question of whether the defamatory imputations are true . . . is ordinarily for the jury." *Accord, Akins v. Altus Newspapers, Inc.,* 609 P.2d 1263, 1266 (Okla. 1980), *cert. denied,* 449 U.S. 1010 (1980).

It was the function of the jury, rather than the trial court at the summary judgment level, to determine whether the article was substantially true, as far as it concerned Kohn's Sporting Goods. A jury is especially suited to make the factual determination of whether the average reader would have been affected by the article in a far different manner than if the article had been accurately written. Viewing the article in its most reasonable light, a jury could have reasonably concluded that the allegation of "promotion of dangerous drugs" such as "heroin, cocaine, hashish, and morphine," as reported in the article, carried a far different connotation and stigma than the actual confiscation of six grams of marijuana. Since the defense of substantial truth in this case was a matter of factual interpretation, the trial court properly denied defendant's motion for summary judgment.

Affirmed.

*Steven K. Christensen* for defendant-appellant.

*Lawrence W. Cohn (Cohn & Smith* of counsel) for plaintiff-appellee.