214 P.3d 1110

Waldorf Roy **WILSON**, II, Plaintiff–Appellant

v.

George **FREITAS**; William Ching; Roy Asher; Marvin Rivera; Samuel Sheldon; County of Kauai; Joan Conrow; Honolulu Publishing Co., Ltd., nka Pacificbasin Communications, LLC dba Honolulu Magazine; Dennis Wilken; Kauai Publishing Co. dba The Garden Island; John Does 1–50; Jane Does 1–50; Doe Partnerships, Corporation, or other Entities 1–50; Doe Governmental Entities 1–50, Defendants–Appellees.

Nos. 27747, 27856.

Intermediate Court of Appeals of Hawai'i.

June 30, 2009.

As Amended Aug. 4, 2009.

Richard Naiwieha Wurdeman, Hilo, on the briefs, for Plaintiff–Appellant.

John T. Komeiji, Karen Y. Arikawa (Watanabe Ing & Komeiji LLP), Honolulu, on the briefs, for Defendant–Appellee.

Margaret H. Sueoka, Deputy County Attorney, on the briefs, for Defendant–Appellee William Ching.

Jeffrey S. Portnoy, Peter W. Olson (Cades Schutte LLP), Honolulu, on the briefs, for Defendants–Appellees Dennis Wilken and Kauai Publishing Co. dba The Garden Island, Defendants-Appellees Joan Conrow and Honolulu Publishing Co., Ltd., dba Honolulu Magazine.

Roger R. Myers, Katherine A. Keating (Holme Roberts & Owen LLP), on the briefs, for Defendants–Appellees Dennis Wilken and Kauai Publishing Co. dba The Garden Island.

David J. Minkin, Becky T. Chestnut, Kara M.L. Young (McCorriston Miller Mukai MacKinnon LLP), Honolulu, on the briefs, for Defendants–Appellees County of Kauai, Roy Asher, Samuel Sheldon and Marvin Rivera.

WATANABE, Acting Chief Judge, NAKAMURA, and FUJISE, JJ.

Opinion of the Court by NAKAMURA, J.

This case arises out of the investigation by the Kaua'i Police Department (KPD) of two murders and an attempted murder, each involving sexual assault and stabbing of a woman, that were committed in separate incidents in 2000 on Kaua'i. In 2002, Plaintiff–Appellant Waldorf Roy Wilson, II, (Wilson) sued the Kaua'i Police Chief, certain Kaua'i police officers, and the County of Kaua'i (County), claiming that they had engaged in misconduct while investigating him for these crimes. Wilson also sued the authors and publishers of articles appearing in the Honolulu Magazine and The Garden Island newspaper, claiming, among other things, that the articles had defamed him.

During the times relevant to this case, George Freitas (Freitas) was the Kaua'i Police Chief and William Ching (Ching), Roy Asher (Asher), Marvin Rivera (Rivera), and Samuel Sheldon (Sheldon) were members of the KPD. All were employees of the County. Joan Conrow (Conrow) was the author of an article published in the August 2001 edition of Honolulu Magazine entitled, "The Killing Year." Dennis Wilken (Wilken) was the author of an article appearing in the January 28, 2002, edition of The Garden Island newspaper under the headline, "Suspected killer has parole hearing today."

On September 11, 2002, Wilson filed a complaint in the Circuit Court of the Fifth Circuit (circuit court) against Defendants–

Appellees Freitas; Ching; Asher; Rivera;[1] Sheldon; the County; Conrow; Honolulu Publishing Co., Ltd., nka Pacific Basin Communications, LLC, dba Honolulu Magazine (Honolulu Publishing); Wilken; and Kauai Publishing Co., dba The Garden Island (Kauai Publishing).[2] The complaint alleged numerous causes of action, including defamation; slander; slander per se; libel; libel per se; invasion of privacy; intentional, deliberate, knowing, and/or negligent infliction of emotional distress; punitive conduct; violations of Wilson's constitutional rights; failure to properly train, supervise, control, and/or discipline employees; trespass; and unlawful imprisonment. On March 2, 2006, the circuit court entered Judgment in favor of Defendants and against Wilson with respect to all claims asserted in the action. It is from this Judgment that Wilson appeals.

On appeal, Wilson asserts that the circuit court erred by: 1) granting Honolulu Publishing and Conrow's motion for summary judgment; 2) granting Kauai Publishing and Wilken's motion for summary judgment; and 3) dismissing Wilson's complaint against the County Defendants for failure to prosecute.[3] For the reasons discussed below, we affirm.

## I. STATEMENT OF FACTS

Wilson was convicted of rape and kidnapping in 1983 and sentenced to prison. In January 1999, he was released on parole and resided in Honolulu. In about January of 2000, Wilson relocated to Kaua'i.

During the spring and summer of 2000 on Kaua'i, two women were murdered and a third brutally assaulted, in what appeared to be connected attacks. All three women were sexually assaulted and stabbed. On April 7, 2000, the body of a woman who had been raped, severely beaten, and stabbed was found near a Kaua'i state park. Several weeks later, on May 23, 2000, a second wom-

an was raped, beaten, and stabbed by a man. This victim survived the attack when the assailant's knife broke, apparently as the result of hitting the victim's breastbone, and she later provided the police with a description of the assailant. On August 30, 2000, the body of a third woman was found on a Kaua'i beach. She too had been sexually assaulted and stabbed.

The three attacks were extensively covered on Kaua'i as well as statewide by the print and broadcast media. All three victims were petite, middle-aged, Caucasian women, and the similarities between the attacks led to speculation that the crimes may have been perpetrated by one man—a serial killer.

On September 12 and 13, 2000, KHNL News 8 reported in television broadcasts that Kaua'i police questioned Wilson in connection with their investigation into the three attacks. KHNL News 8 broadcasted Wilson's picture next to a composite sketch prepared by the police based on the surviving victim's description of her attacker. The news broadcasts reported that the "police say Wilson bears a likeness to the sketch prepared with information given [by the surviving victim]." The news broadcasts further reported that Wilson had been convicted of kidnapping and raping a woman in Kaneohe in 1982; that he was released from prison in January 1999 and moved to Kaua'i one year later; that the police administered "a lie detector test" to Wilson; that after the police interview, Wilson's parole was "revoked" for parole violations unrelated to the three attacks; and that he had not been arrested in connection with the three attacks.

In the August 2001 issue of Honolulu Magazine, Conrow wrote a story entitled "The Killing Year," which discussed the spate of violent crimes committed on Kaua'i in 2000—six homicides and two near homicides, includ-

---

1. Rivera's name was misspelled as "Riveira" in the complaint.

2. We will collectively refer to all the Defendants–Appellees as the "Defendants"; Defendants–Appellees Freitas, Ching, Asher, Rivera, Sheldon, and the County as the "County Defendants"; Defendants–Appellees Freitas, Ching, Asher, Rivera, and Sheldon as the "KPD Defendants"; and Defendants–Appellees Conrow, Honolulu Pub-

lishing, Wilken, and Kauai Publishing as the "Media Defendants."

3. The Honorable George Masuoka presided over the Media Defendants' motions for summary judgment. The Honorable Kathleen N.A. Watanabe presided over the proceedings resulting in the dismissal of the County Defendants.

ing the attacks on the three women. The article detailed the efforts of the KPD to track and find an apparent serial killer who police suspected was responsible for the attacks on the three women. It described the pressure placed on the police to solve these crimes; the fear the three attacks had created in the community; public speculation that the police had botched the investigation; the belief of the police that people in the community had information about the crimes but had refused to come forward; the inconclusive results of the DNA testing; and the frustration of the police over their inability to resolve the cases and bring charges.

When discussing potential suspects for the attacks, the article referred to information obtained through Police Chief Freitas and stated as follows:

> [Chief Freitas] won't say much about the short list of suspects the department has been dogging since the get-go, a list "of people who may have been in the general area at the general time, may have been doing suspicious things, may have known the victims, cars seen in the area. There's a handful we've been working all along."
>
> Freitas also won't reveal if that list includes Waldorf "Wally" A. Wilson, a convicted rapist from O'ahu who was returned to prison late last year after being picked up on Kaua'i for a parole violation. Honolulu's News 8 identified Wilson as the suspected killer, a report quickly denounced by police but widely accepted as fact on the Garden Island.

The last-quoted paragraph is the only mention of Wilson in the seven-page article.

On January 28, 2002, an article written by Wilken under the headline, "Suspected killer has parole hearing today," was published in The Garden Island newspaper. Although the article did not refer to Wilson by name, it provided details, such as a 42–year–old man previously convicted of rape with a parole hearing scheduled that day, which identified Wilson as the subject of the article. The article discussed Wilson's upcoming parole hearing and noted that he "is in the spotlight because many high-ranking Kaua'i police and detectives consider him a serious suspect in the three brutal rape-stabbings which result-

ed in two deaths and a near-death on West Kaua'i during the spring and summer of 2000." The article stated that while no one in authority at the KPD had ever confirmed Wilson's status as a serious suspect in an on-the-record statement, enough reporters and citizens had been told about "this suspect" that an anonymous flyer was circulated warning of Wilson's potential release.

The article went on to note that Wilson "was identified on an Oahu television newscast in September of 2000, when he was first brought in for questioning as a primary suspect in the killings;" local police and prosecutors could never agree on whether there was sufficient evidence to charge Wilson; the surviving victim failed to identify Wilson as her assailant in a police lineup held in late 2000; Wilson was sent back to prison in the fall of 2000 on a parole violation; and the murders have stopped since Wilson was re-incarcerated for the parole violation. The article concluded with the following passage:

> The description and a composite drawing released by KPD after the second attack's survivor was interviewed, identified the assailant as a stocky, local looking man with a dark complexion.
>
> The convicted sex offender whose parole hearing is today fits that general description.

## II. PROCEDURAL HISTORY

On September 11, 2002, Wilson filed his complaint. In the "Factual Allegations" section of the complaint, Wilson described the attacks on the three women and denied that he was responsible or involved in any way. Wilson's complaint contained the following additional pertinent factual allegations:

1. KPD Lieutenant Ching and other KPD Defendants investigated Wilson by placing him under surveillance and coercing him to undergo a polygraph examination.

2. Ching pressured the Hawai'i Paroling Authority (HPA) to hold Wilson on "very technical parole violations." Ching "believed [Wilson] to be the prime suspect in the [three] attacks[,] even though no competent evidence linked [Wilson] to any of the attacks." Ching and other KPD Defendants informed various media sources that they

believed that Wilson was responsible for the attacks and was the "Kauai serial killer."

3. DNA samples taken from the victims of the attacks were compared with samples taken from Wilson and "the results proved to be at minimum inconclusive, but more likely clearly not a match, thus exonerating [Wilson]."

4. In late 2000, Wilson was subjected to a line-up and the surviving victim did not identify Wilson as her attacker.

5. Despite this exculpatory evidence, the KPD and the KPD Defendants continue to provide defamatory information about Wilson to various media sources and the HPA in an attempt to pressure the HPA to keep Wilson incarcerated. They have also attempted to destroy Wilson's reputation and liberty and to invade his privacy.

6. Based on information provided by some or all of the KPD Defendants, KHNL News 8 televised stories on September 12–13, 2000, which indicated that Wilson "was the subject of the police probe" relating to the three attacks and which "showed a picture of [Wilson] and specifically named him as the suspect in the attacks." "[S]ince this first publication by way of television, various other media sources have referenced [Wilson]."

7. In an article published in the August 2001 edition of Honolulu Magazine,

> the author stated in relevant part, that "Honolulu's News 8 identified Wilson [the Plaintiff] as the suspected killer, a report quickly denounced by police but widely accepted as fact on the Garden Island." That this unfounded assertion of an acceptance of fact on Kauai was clearly defamatory and otherwise tortious.

(Brackets in original.)

8. In an article appearing in The Garden Island newspaper on January 28, 2002, after making references clearly identifying Wilson as the focus of the article,

> the author concluded that "the convicted sex offender whose parole hearing is today fits that general description," obviously expressing the author's conclusion that the Plaintiff is in fact the perpetrator of the attacks and a reasonable person would reach that conclusion after reading said article. Other defamatory comments were also provided as well as tortious acts committed.

On October 14, 2003, Honolulu Publishing and Conrow filed a motion for summary judgment as to all claims asserted against them by Wilson. Honolulu Publishing and Conrow asserted that the challenged Honolulu Magazine article was "a truthful, fair, and accurate report on a matter of public concern" and did not support a claim for defamation, invasion of privacy, or infliction of emotional distress. On January 16, 2004, the circuit court granted this motion for summary judgment.

On April 27, 2004, Kauai Publishing and Wilken filed a motion for summary judgment as to all claims asserted against them, advancing arguments similar to those raised by Honolulu Publishing and Conrow. Kauai Publishing and Wilken additionally argued that Wilson's claims against them should be dismissed because Wilson was "libel proof," in that Wilson's reputation was already so tarnished when the Garden Island newspaper article was published that Wilson's reputation was not capable of sustaining further harm. On August 16, 2004, the circuit court granted Kauai Publishing and Wilken's motion for summary judgment.

On November 3, 2005, the County filed a motion to dismiss Wilson's complaint for failure to prosecute, asserting deliberate delay and actual prejudice. On November 9, 2005, the other County Defendants filed joinders to the County's motion. On December 20, 2005, the circuit court orally granted the County's motion and dismissed Wilson's claims against all the County Defendants. On January 4, 2006, the circuit court filed its findings of fact, conclusions of law, and order granting the County's motion to dismiss and the joinders by the other County Defendants.

## III. DISCUSSION

### A. The Circuit Court Did Not Err in Granting the Media Defendants' Motions for Summary Judgment

#### 1. Applicable Law

##### a. Summary Judgment

Wilson argues that the circuit court erred in granting the Media Defendants' motions for summary judgment. We disagree.

The standard by which we review a circuit court's ruling on a motion for summary judgment is well settled:

> "We review the circuit court's grant or denial of summary judgment *de novo,*" *Querubin v. Thronas,* 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005), using the same standard applicable to the circuit court. *Iddings v. Mee–Lee,* 82 Hawai'i 1, 5, 919 P.2d 263, 267 (1996). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c).
>
> Once the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact and its entitlement to a judgment as a matter of law, the opposing party "may not rest upon the mere allegations or denials of [the opposing party's] pleading" but must come forward, through affidavit or other evidence, with "specific facts showing that there is a genuine issue for trial." HRCP Rule 56(e). If the opposing party fails to respond in this fashion, the moving party is entitled to summary judgment as a matter of law. *Hall v. State,* 7 Haw.App. 274, 284, 756 P.2d 1048, 1055 (1988); *see also* HRCP 56(e).

*Wittig v. Allianz, A.G.,* 112 Hawai'i 195, 200, 145 P.3d 738, 743 (App.2006).

> A summary judgment motion challenges the very existence or legal sufficiency of the claim or defense to which it is addressed. In effect the moving party takes the position that he is entitled to prevail because his opponent has no valid claim for relief or defense to the action, as the case may be. He thus has the burden of demonstrating that there is no genuine issue as to any material fact relative to the claim or defense and he is entitled to judgment as a matter of law.

*First Hawaiian Bank v. Weeks,* 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989) (quotation marks, ellipsis points, and citations omitted).

Where the party defending the action (who does not have the burden of proof) moves for summary judgment,

> [h]e may discharge his burden by demonstrating that if the case went to trial there would be no competent evidence to support a judgment for his opponent. For if no evidence could be mustered to sustain the nonmoving party's position, a trial would be useless.

*Id.* at 396–97, 772 P.2d at 1190. (quotation marks, ellipsis points, brackets, and citations omitted).

In construing Federal Rules of Civil Procedure (FRCP) Rule 56(c), on which Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) is modeled, the United States Supreme Court has stated:

> In our view, the plain language of [FRCP] Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation marks omitted).

"A party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [that party] entitled to a trial on the basis of a hope that [he or she] can produce some evidence at that time.'" *Henderson v. Prof'l Coatings Corp.,* 72 Haw. 387, 401, 819 P.2d 84, 92 (1991) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2727 (1983)).

### b. Defamation

■ A plaintiff must establish the following four elements to sustain a claim for defamation:

a) a false and defamatory statement concerning another;

b) an unprivileged publication to a third party;

c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; [4] and

d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Gold v. Harrison,* 88 Hawai'i 94, 100, 962 P.2d 353, 359 (1998) (brackets in original except for those surrounding the footnote) (quoting *Dunlea v. Dappen,* 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996)).

■ "'[T]ruth is an absolute defense' to defamation." *Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd.,* 100 Hawai'i 149, 173, 58 P.3d 1196, 1220 (2002) (citation omitted). The literal truth of every word or detail of the challenged statement is not required; the statement need only be substantially true. *Kohn v. West Hawaii Today, Inc.,* 65 Haw. 584, 590, 656 P.2d 79, 83 (1982) ("[I]t is sufficient if the substance, the gist, the sting, of the matter is true."); *Basilius v. Honolulu Publ'g Co.,* 711 F.Supp. 548, 551 (D.Haw. 1989).

■ Where the publication at issue involves a matter of public concern, the plaintiff bears the burden of proving falsity when suing a media defendant. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776–77, 106 S.Ct. 1558, 89 L.Ed.2d 783 (1986). In *Hepps,* the United States Supreme Court stated, "To ensure that true speech on matters of public concern is not deterred, we hold that the common-law presumption that defamatory speech is false cannot stand when a plaintiff seeks damages against a media defendant for speech of public concern." *Id.* The Court noted that placing "the burden of proving truth upon media

defendants who publish speech of public concern deters such speech because of the fear that liability will unjustifiably result." *Id.* at 777, 106 S.Ct. 1558. To avoid this "chilling" effect, the Court held that "a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation from a media defendant." *Id.* A challenged statement "is not considered false unless 'it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 517, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

■ Statements of opinions are not automatically immune from defamation actions. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 17–22, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). However, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.* at 20, 110 S.Ct. 2695. Thus, a threshold question in a defamation suit is "whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Unelko Corp. v. Rooney,* 912 F.2d 1049, 1053 (9th Cir.1990) (quotation marks, citation, and brackets omitted). The Hawai'i Supreme Court has adopted the three-part test set forth by the Ninth Circuit in *Unelko* for answering this threshold question and determining whether a challenged statement can support a defamation claim. *Gold,* 88 Hawai'i at 101, 962 P.2d at 360. Under the three-part test, the court analyzes:

(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false.

*Id.* (brackets and emphasis in original omitted).

■ "[S]ummary Judgment is the preferred means of dealing with First Amend-

---

4. We do not decide whether Wilson is a public figure or a limited purpose public figure with

respect to this case. For purposes of our analysis, we assume that he is a private figure.

ment cases due to the chilling of First Amendment rights inherent in expensive and time-consuming litigation. This is particularly the case with smaller newspapers, magazines, and television and radio stations." *Basilius*, 711 F.Supp. at 550 (citations omitted).

Summary judgment is proper in a defamation action where the court finds that the challenged statements are "incapable of bearing the defamatory meaning ascribed to [them] by [the plaintiff] as a matter of law." *Fernandes v. Tenbruggencate*, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982). In a defamation action based on a published article, the words and phrases of the article cannot be viewed in isolation or taken out of context. *See id.* at 230, 649 P.2d at 1148. The entire article must be considered as a whole in order to determine the sense in which the article would rationally be understood by its readers. *Id.* "[T]he law does not dwell on isolated passages, but judges of the publication as a whole." *Id.* (internal quotation marks and citation omitted).

### 2. The Honolulu Magazine Article

#### a. Defamation Claim

Wilson does not dispute that certain members of the KPD considered him to be "the prime suspect" in the three attacks and had communicated this view to media sources. Nor does he dispute that the KHNL News 8 broadcasts in September 2000 could fairly be characterized as identifying him as a suspect in the police investigation regarding the attacks. Indeed, Wilson alleged as much in the factual allegations of his complaint.

Instead, Wilson claims that the Honolulu Magazine article was defamatory because the author went beyond identifying Wilson as a suspect and accused Wilson of actually being, or very likely being, the "Kaua'i serial killer." In support of his claim, Wilson focuses on a short passage in the lengthy article that states: "Honolulu's News 8 identified Wilson as the suspected killer, a report quickly denounced by police but widely accepted as fact on the Garden Island." Wilson's claim that

the Honolulu Magazine article was defamatory is without merit.

When the article is considered as a whole, we conclude that the challenged statements, as a matter of law, are "incapable of bearing the defamatory meaning ascribed to [them]" by Wilson. *Fernandes*, 65 Haw. at 228, 649 P.2d at 1147. The article did not state or infer that Wilson was in fact the Kaua'i serial killer or that he was very likely the Kaua'i serial killer. The plain meaning of the article is that Wilson was considered a suspect in the attacks, a circumstance that Wilson readily concedes. The article noted that Chief Freitas indicated that there was a handful of suspects; that the crimes remained unsolved; that DNA testing was inconclusive; and that the police were frustrated by the failure of people in the community to come forward with information. We conclude that the article could not rationally be understood as the author's factual assertion that Wilson was the Kaua'i serial killer or that he was very likely the Kaua'i serial killer.

We also reject Wilson's claim that he was defamed by the article's statement that it was "widely accepted as fact" on Kaua'i that he was the suspected serial killer. The "widely accepted" characterization was a statement of the author's opinion that was not susceptible of being proved true or false. *See Gold*, 88 Hawai'i at 101, 962 P.2d at 360. Moreover, assuming *arguendo* that this characterization was an assertion of a provable fact, Wilson failed to respond to the summary judgment motion by demonstrating that he could meet his burden of proving through competent evidence that the characterization was false.[5] Accordingly, the circuit court properly granted summary judgment in favor of Conrow, the article's author, and Honolulu Publishing on Wilson's defamation claim.

#### b. Invasion of Privacy Claims

Wilson argues that the circuit court erred in granting summary judgment in favor of

---

5. As discussed *infra*, the Honolulu Magazine article involved speech of legitimate public concern. Thus, Wilson had the burden of proving the falsi-

ty of the challenged statements. *Hepps*, 475 U.S. at 776–77, 106 S.Ct. 1558.

Conrow and Honolulu Publishing on Wilson's invasion-of-privacy claims for 1) publicity that unreasonably put him a false light and 2) unreasonable publicity given to his private life. We disagree.

The false-light tort is defined in the Restatement (Second) of Torts as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977) (cited in *Chung v. McCabe Hamilton & Renny Co.*, 109 Hawai'i 520, 534 n. 18, 128 P.3d 833, 847 n. 18 (2006)).

Although false-light and defamation claims are not identical, there is a substantial overlap between the claims. Courts have held that where, as here, a false-light claim is based on the same statements as a defamation claim, the false-light claim must be dismissed if the defamation claim is dismissed. *Gold*, 88 Hawai'i at 103, 962 P.2d at 362 (concluding that because plaintiffs' defamation claim had failed, their false-light/invasion of privacy claim must also fail, as it was a "derivative claim[ ] based on the [p]laintiffs' claim that [the defendant's statement] was defamatory"); *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal.App.3d 961, 234 Cal.Rptr. 702, 704 (1987) ("When an action for libel is alleged, a false-light claim based on the same facts ... is superfluous and should be dismissed.").

We have already concluded that the circuit court properly granted summary judgment in favor of Honolulu Publishing and Conrow on Wilson's defamation claim. For the same reasons, we conclude that Wilsons' false-light claim, which is derivative of his defamation claim, cannot stand.

The circuit court also properly granted summary judgment on Wilson's claim that the Honolulu Magazine article gave unreasonable publicity to his private life. The Restatement (Second) of Torts defines the unreasonable-publicity tort as follows:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be regarded as highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

Restatement (Second) of Torts § 652D (1977) (cited in State of *Hawai'i Org. of Police Officers (SHOPO) v. Soc'y of Prof'l Journalists–Univ. of Hawai'i Chapter*, 83 Hawai'i 378, 398, 927 P.2d 386, 406 (1996)).

Wilson cannot satisfy the second element required to prove the unreasonable-publicity tort. Wilson concedes that the Kaua'i serial murder investigation was of legitimate concern to the public, but he claims that identifying Wilson in connection with the investigation was not. We disagree.

The identity of individuals who are questioned by the police regarding unsolved murders or who are suspects in the police investigation of such crimes is a matter of legitimate concern to the public. Wilson had previously been identified on news broadcasts as a convicted sex offender who had moved to Kaua'i a short time before the three attacks and as a person who had been questioned by the police and subjected to a polygraph examination in connection with the police investigation into the attacks.

We conclude that the Honolulu Magazine article's identification and discussion of Wilson in connection with the police investigation was a matter of legitimate concern to the public. Because Wilson could not meet his burden of proof on the legitimate-public-concern element, the circuit court properly granted summary judgment in favor of Honolulu Publishing and Conrow on Wilson's unreasonable-publicity claim.

### c. Emotional Distress Claims

We reject Wilson's contention that the circuit court erred in granting summary judgment in favor of Honolulu Publishing and Conrow on his intentional or negligent infliction of emotional distress claims. Wilson does not offer any separate argument with respect to these claims and instead merely incorporates his arguments on the defamation issue and asserts that emotional distress claims apply in invasion of privacy situations.

■ Wilson's emotional distress claims are "parasitic" of his defamation claim and must stand or fall with that claim. *Basilius*, 711 F.Supp. at 552; *see Gold*, 88 Hawaiʻi at 103, 962 P.2d at 362; *Flynn v. Higham*, 149 Cal.App.3d 677, 197 Cal.Rptr. 145, 147 (1983). "[T]o hold otherwise would permit [Wilson] to 'end run' the Constitution." *Basilius*, 711 F.Supp. at 552. Our conclusion that the circuit court properly granted summary judgment on Wilson's defamation claim necessarily means that his emotional distress claims were likewise properly dismissed on summary judgment.

### 3. The Garden Island Newspaper Article

### a. Defamation Claim

■ Wilson contends that the Garden Island newspaper article written by Wilken defamed him because the article conveyed to the reader that Wilson *was* the Kauaʻi serial killer. The article did not identify Wilson by name, but the details provided left no doubt that Wilson was the person discussed in the article. Wilson does not contest the accuracy of the bulk of the article, which noted that he was scheduled for a parole hearing that day; that "many high-ranking Kauai police and detectives consider him a serious suspect" in the three brutal attacks; that he was identified in a television newscast in September of 2000 as a person police had questioned regarding the killings; and that the murders had stopped since he was re-incarcerated on a parole violation.

In support of his defamation claim, Wilson focuses on the last two sentences of the article which state: "The description and a composite drawing released by KPD after the second attack's survivor was interviewed, identified the assailant as a stocky, local looking man with a dark complexion. The convicted sex offender whose parole hearing is today fits that general description." We conclude that Wilson's claim that the article defamed him by asserting that he was the Kauaʻi serial killer is without merit.

When the article is considered as a whole, the challenged statements, as a matter of law, are incapable of bearing the meaning ascribed to them by Wilson. Thus, the circuit court properly granted summary judgment in favor of Kauai Publishing and Wilken on Wilson's defamation claim.

■ The article specifically reported that local police and prosecutors could never agree on whether there was sufficient evidence to charge Wilson and that the surviving victim failed to identify Wilson as her assailant in a police lineup held in late 2000. The article did not go beyond accurately characterizing Wilson as someone that members of the KPD considered to be a "serious suspect" in the three attacks, something Wilson acknowledged in the factual allegations of his complaint. Accurately identifying someone as a suspect in a criminal investigation does not constitute an accusation of guilt and cannot support a claim for defamation, even if the plaintiff proves he is not guilty. *See Basilius*, 711 F.Supp. at 551–52 (rejecting argument that a publication's materially accurate report of murder allegations implied that plaintiff had actually committed the murder); *Foley v. Lowell Sun Publishing Co.*, 404 Mass. 9, 533 N.E.2d 196, 197 (1989) (holding that a newspaper article's report that the plaintiff had been arrested and charged with assaulting a police officer could not reasonably be construed as accusing the plaintiff of actually committing the assault).[6] A contrary rule would chill the ability of the

---

6. In *Foley*, a newspaper article stated that the plaintiff had been arrested "after assaulting a police officer when he arrived on the scene." 533 N.E.2d at 196. The plaintiff claimed that the above-quoted statement in the article defamed him by falsely asserting that he had committed a crime. *Id.* After examining the challenged statement in the context of the entire article, the court held, as a matter of law, that the article was not defamatory because a reasonable reader could not conclude that the article was actually accus-

media to report on criminal investigations and deprive the public of information on legitimate matters of concern.[7]

The author's reference to Wilson as fitting the "general description" of the perpetrator that was provided by the surviving victim cannot rationally be understood as an assertion that Wilson was, in fact, the serial killer.[8] The description of the assailant attributed to the surviving victim, "a stocky, local looking man with a dark complexion," was itself nebulous and encompassed characteristics shared by a large number of individuals. Thus, the author's statement that Wilson fits this general description did not amount to an assertion that Wilson was the guilty party.[9]

### b. Invasion of Privacy and Emotional Distress Claims

Wilson contends that the circuit court erred in granting summary judgment in fa-

vor of Kauai Publishing and Wilken on Wilson's false-light, unreasonable-publicity, and emotional distress claims. We reject Wilson's contentions based on the same analysis we used in upholding the circuit court's grant of summary judgment on the corresponding claims asserted by Wilson against Honolulu Publishing and Conrow.

### B. The Circuit Court Did not Err in Dismissing Wilson's Claims Against the County Defendants for Failure to Prosecute.

 HRCP Rule 41(b) provides that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against it." A case may properly be dismissed for failure to prosecute if there is deliberate delay, contu-

---

ing the plaintiff of committing the assault. *Id.* at 197.

7. We conclude that the Garden Island newspaper article, like the Honolulu Magazine article, involved speech of *legitimate public concern.* We also observe that to the extent the article caused harm to Wilson's reputation, such harm was attributable to the article's materially accurate report that Wilson was considered to be a suspect in the three attacks by members of the KPD, and not to any accusation in the article that he in fact had committed the attacks.

8. A *KHNL News 8* broadcast had earlier reported that, according to the police, Wilson bears a likeness to the composite sketch that was prepared with information provided by the surviving victim. The article's statement that Wilson fits the general description provided by the surviving victim of her attacker therefore basically repeats previously reported information.

9. Wilson contends that the assertion that he fits the general description of the perpetrator provided by the surviving victim is false because he is not stocky and has a fair complexion. Kauai Publishing and Wilken respond that the terms "stocky," "local looking," and "dark complexion" are elastic in meaning. They argue that whether Wilson fits the general description of the perpetrator provided by the surviving victim is a subjective conclusion, and not a verifiable fact that can support a defamation claim. In the circuit court, Kauai Publishing and Wilken asked the court to take judicial notice of an exhibit reflecting Wilson's arrest and conviction record from the Hawai'i Criminal Justice Data Center, which also contained a photograph of Wilson dated 07/05/02 and listed his height as 5'11" and

his weight as 175 pounds. Wilson did not object to this exhibit but the circuit court indicated that it would not take judicial notice of the exhibit. Kauai Publishing and Wilken also submitted an exhibit containing the photographs of Wilson and the composite sketch (based on the surviving victim's description of her assailant) that were shown during the KHNL News 8 broadcasts. During certain segments of the broadcasts, the composite sketch was shown under the heading "Suspect Description" and was accompanied by text that read, "Local male[,] 6'0"[,] 200 lbs.[,] [and] Athletic build."

The description of a person as a stocky, local-looking man with a dark complexion is indistinct and may encompass a wide variation in meaning depending on the observer. Therefore, in many situations, whether a person fits such a general description may not be capable of being proved true or false. *See Grillo v. John Alden Life Ins. Co.*, 939 F.Supp. 685, 688 (D.Minn.1996) (concluding that statements describing the plaintiff as "short and stupid" could not support a defamation claim because they were not susceptible of empirical determination and could not be proved true or false). Similar considerations may apply to whether a person fits the general description of a perpetrator depicted in a composite sketch. In this case, we have already determined that the challenged statements are incapable of bearing the defamatory meaning ascribed to them by Wilson. Thus, we need not address whether Wilson's defamation claim should be rejected on the alternative ground that the statement that Wilson fits the general description of the perpetrator provided by the surviving victim was a statement that is not susceptible of being proved true or false.

macious conduct or actual prejudice. *See Shasteen, Inc. v. Hilton Hawaiian Village Joint Venture,* 79 Hawai'i 103, 107, 899 P.2d 386, 390 (1995). Dismissal of a complaint is a severe sanction and should only be used in extreme circumstances and where lesser sanctions would not serve the interests of justice. *Id.*

A plaintiff who brings an action "clearly and unquestionably has the duty to proceed with the cause in a diligent fashion." *Ellis v. Harland Bartholomew & Assoc.,* 1 Haw.App. 420, 427, 620 P.2d 744, 749 (1980). If it amounts to deliberate delay, "failure to prosecute diligently is sufficient by itself to justify a dismissal[.]" *Anderson v. Air West, Inc.* 542 F.2d 522, 524 (9th Cir.1976); [10] *see Ellis,* 1 Haw.App. at 427–28, 620 P.2d at 749. An order granting a motion to dismiss for failure to prosecute is reviewed for abuse of discretion. *Hawaii Auto. Retail Gasoline Dealers Ass'n v. Brodie,* 2 Haw.App. 99, 100–01, 626 P.2d 1173, 1174 (1981).

### 1. Procedural History

The procedural history pertinent to the circuit court's dismissal of Wilson's complaint against the County Defendants is as follows:

On September 11, 2002, Wilson filed his complaint and requested an exemption from the Court Annexed Arbitration Program (CAAP), arguing that the value of his case exceeded the $150,000 CAAP limit. The arbitration administrator denied Wilson's request on September 19, 2002, and the circuit court affirmed the administrator's decision on September 30, 2002.

On November 17, 2003, Wilson filed another motion for removal of the case from the CAAP, which was denied by the circuit court on February 25, 2004. Wilson sought discovery of police records relating to the ongoing investigations of the attacks on the three women. By letter dated January 16, 2004,

the CAAP arbitrator denied Wilson's discovery request, ruling that the County and Freitas had not waived the "investigative records and law enforcement privilege." On September 13, 2004, approximately eight months after the CAAP arbitrator had denied Wilson's discovery request for access to police reports, a teleconference hearing was held before the CAAP arbitrator to further discuss discovery issues. Although a transcript of the teleconference hearing was not included in the record, the County and Wilson agree that Wilson discussed filing an appeal of the CAAP arbitrator's discovery rulings within a week after the teleconference hearing.[11] No appeal, however, was ever filed by Wilson. In addition, Wilson did not communicate with the County or take any action in the case for more than thirteen months following the September 13, 2004, teleconference hearing.

On November 3, 2005, the County filed a motion to dismiss Wilson's complaint for failure to prosecute, asserting deliberate delay and actual prejudice. On November 9, 2005, Freitas, Ching, Asher, Rivera, and Sheldon filed joinders to the County's motion. Sheldon and Rivera submitted declarations stating that they had been prejudiced by the lawsuit in connection with applications to obtain loan financing for personal and/or family related matters. On November 21, 2005, Wilson filed a third motion to remove the case from the CAAP. On December 20, 2005, the circuit court orally denied Wilson's motion to remove the case from the CAAP and granted the County's motion to dismiss.

The circuit court subsequently issued the following pertinent findings of fact and conclusions of law in support of its order granting the County's motion to dismiss:

FINDINGS OF FACT

1. On September 13, 2004, [Wilson's] counsel represented to the arbitrator and defendants' counsel that he would appeal

---

**10.** Because HRCP Rule 41(b) closely parallels FRCP Rule 41(b), the federal courts' interpretation of FRCP Rule 41(b) may provide useful guidance.

**11.** The County asserts that the CAAP arbitrator invited Wilson to appeal the discovery decision to the circuit court and that Wilson stated he would

file an appeal within one week. Wilson claims that he indicated that he would "need to consider some sort of appeal" because the lack of meaningful discovery completely frustrated his ability to proceed with the case and that "if any appeal was taken, it would be done within seven days of the date of the teleconference."

the discovery decisions to the arbitration judge within a week;

2. No appeal of the discovery decisions to the arbitration judge was ever taken by [Wilson];

3. [Wilson], through the inaction of his counsel, did nothing including no communication regarding the case for over one year;

4. [Wilson] sued Defendants Freitas, Ching, Asher, Rivera, and Sheldon, not only in their official capacities as [KPD] officer [sic] but also in their individual capacities;

5. The instant litigation adversely affected the individual [KPD] officers as evidenced by the declarations of Defendants Sheldon and Rivera which were filed on November 9, 2005 wherein they stated that the lawsuit had a "negative effect" on the ability to obtain loan financing for personal matters and/or family related matters or that they have "been prejudiced" because of additional questions regarding the lawsuit when submitting applications to obtain loan financing for personal matters and/or family related matters;

. . . .

## CONCLUSIONS OF LAW

1. [Wilson] deliberately delayed prosecution of his case by failing to appeal the discovery decisions to the arbitration judge for more than one year;

2. [Wilson] deliberately delayed prosecution of his case by failing to take any action in his case for more than one year;

3. All [County] Defendants have suffered actual prejudice because of the lack of any activity including no communication from [Wilson's] counsel for more than one year, as [Wilson] has failed to timely prosecute his case;

4. The named Defendants, [KPD] officers Freitas, Ching, Asher, Rivera, and Sheldon also suffered actual prejudice as they were also named in the lawsuit in their individual capacities thereby resulting in a negative effect on their ability to obtain re-financing and/or loans over the past three years, as [Wilson] has failed to timely prosecute his case;

5. In the best interest of justice, dismissal of [Wilson's] complaint with prejudice is warranted.

### 2. Deliberate Delay

On appeal, Wilson does not dispute that more than one year had elapsed between the time he indicated he would appeal the arbitrator's discovery decision and the filing of the County's motion to dismiss. Nor does he challenge the circuit court's determination that he did not engage in any communication with the County Defendants or take any action regarding the case during that period of time.

Instead, Wilson contends that the delay was not solely his fault because he advised the CAAP arbitrator and the County Defendants that any appeal would be filed within seven days, and therefore, County Defendants "acquiesced to any delay after the seven day period had elapsed." Wilson also claims that the CAAP arbitrator's discovery rulings were not appealable because Rule 14(A) of the Hawaiʻi Arbitration Rules gives the CAAP arbitrator sole discretion over the extent to which discovery is allowed. Wilson therefore argues that his only option was to have the case removed from the CAAP. We are not persuaded.

As the plaintiff, it was Wilson's duty, and not the duty of the County Defendants, to prosecute his action. *See S & K Airport Drive–In, Inc. v. Paramount Film Distributing Corp.*, 58 F.R.D. 4, 7 (E.D.Pa.1973). Even assuming *arguendo* that a CAAP arbitrator's discovery rulings are not appealable, Wilson provides no explanation for his failure to communicate with the County Defendants or take any action to move the case forward for more than a year.[12]

*See Fidelity Philadelphia Trust Co. v. Pioche Mines Consol., Inc.*, 587 F.2d 27, 29 (9th Cir. 1978) ("It is a well established rule that the duty to move a case is on the plaintiff and not on the defendant or the court.").

---

12. We also reject Wilson's attempt to blame the CAAP arbitrator for failing to reschedule the arbitration hearing after Wilson did not appeal the arbitrator's discovery rulings. Wilson does not explain why he did not contact the CAAP arbitrator to request that the hearing be rescheduled.

Under the circumstances of this case, we conclude that there was sufficient basis for the circuit court to determine that Wilson had engaged in deliberate delay that justified the dismissal of his complaint against the County Defendants. We hold that the circuit court did not abuse its discretion in dismissing Wilson's complaint against the County Defendants for failure to prosecute.

## IV. CONCLUSION

The March 2, 2006, Judgment of the circuit court is affirmed.